Randy TRAVER, Appellant,

v.

STATE of Indiana, Appellee.

No. 67S00–8807–CR–690.

Supreme Court of Indiana.

March 27, 1991.

**1010**

Susan K. Carpenter, Public Defender, J. Michael Sauer, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Randy Traver, was convicted by a jury of two counts of child molestation and one count of incest. He was sentenced to two 20–year terms for

the molestation convictions, to be served consecutively, and to a four-year term for the incest conviction, to be served concurrently with the molestation convictions. Traver raises a number of issues in this direct appeal, but our decision makes it necessary to decide only whether certain *Patterson* statements were improperly admitted.

For the reasons stated below, we reverse the child molestation convictions and the conviction for incest because of the improper admission of *Patterson* statements.

Traver was convicted of molesting his five-year-old daughter, J.T., and another seven-year-old girl, A.G. The State's case was based primarily upon videotaped interviews between J.T. and Ann Newton, and between A.G. and Ellen Johnson. In the tapes, the girls described a game called "wee-wee" which Traver would play with them. J.T. reported that Traver had stuck his finger and tongue into her "private area," and had "put his private into her private." A.G. reported that Traver would play the game which would involve him placing his "weiner" on her and in her "private" area.

Ellen Johnson had A.G. in her elementary school class where A.G. exhibited sexually-oriented behavior which led Johnson to further inquiry revealing the molestations. Johnson found that A.G. possessed a strong ability to know the difference between reality and fantasy, and did not believe she had fabricated the allegation.

Ann Newton, who was qualified as an expert in child sexual abuse, reached certain conclusions after eleven (11) sessions with J.T. and twenty-eight (28) sessions with A.G. Newton found both girls' behavior consistent with sexually-abused children. She found no inconsistencies. Newton also found that they had a present understanding of the difference between reality and falsity and, in her opinion, they had not fabricated their stories.

Tina Gurney testified at trial that she was given custody of J.T. after her removal from the Traver household. Gurney related a conversation with J.T. wherein J.T. told her and her husband about the game and about Traver's insertion of his finger and tongue. Traver's mother, Evelyn, took J.T. to a child analyst and psychiatrist, Sharda Sabesan, after Evelyn suspected that J.T. had been molested. Sabesan had three sessions with J.T. wherein she revealed that Traver had "put his private in her private", and had placed his tongue on her private area, but on top of her clothes.

Detective Richard Rice testified about a statement he took from Traver in which Traver admitted to attaining erections when children sat on his lap. Traver, however, denied touching the children or taking off their clothes. Also in this statement, Traver admitted that in 1979 he had molested another 7–year–old girl.

There was also evidence in J.T.'s videotaped statement, and other statements attributed to her by others that Traver and his mother had instructed J.T. to stay silent, and warned the girl that if she told anyone about what Traver had done, he would go to prison and be killed.

Traver asserts that he was denied his right to confront his accusers because the convictions rested upon out-of-court statements by declarants whom he could not cross-examine.

Two of the out-of-court statements to which Traver refers are the videotapes of the girls talking separately with adults about what Traver had done to them. The other statements are conversations between the children and social workers, teachers, physicians, and foster parents. Both children testified at trial. All of the statements were allowed as substantive evidence pursuant to *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, over Traver's objection that there was an inadequate foundation. Traver challenges the admission of these statements because the girls neither acknowledged giving the statements nor offered in-court testimony about the charges.

In *Patterson,* we held that out-of-court statements by a declarant who is present and available for cross-examination may be used as substantive evidence. The party offering the out-of-court statement

as substantive evidence has the burden of establishing the proper foundation, *Douglass v. State* (1984), Ind., 466 N.E.2d 721, 724, which requires that the declarant, at trial, acknowledge making the statement and offer live testimony consistent with it. *Lambert v. State* (1989), Ind., 534 N.E.2d 235. If the declarant fails to meet both requirements, the statement is generally not admissible under *Patterson* unless there was evidence from which the trial court could conclude that the witness made the statement and remembered having done so, but is feigning lack of memory. *Watkins v. State* (1983), Ind., 446 N.E.2d 949, 960–61. Whether the out-of-court statement is admissible as substantive evidence is to be determined by the trial court on the basis of the witness' entire testimony. *Hodges v. State* (1988), Ind., 524 N.E.2d 774, 782.

■ The purpose of the foundational requirement is two-fold: (1) to ensure that the statement was actually made, and (2) to preserve defendant's right to cross-examine the witness. *Watkins v. State,* 446 N.E.2d 949. Where, for example, a declarant neither admitted nor denied making the statement and refused to testify on Fifth Amendment grounds, the declarant was not available for cross-examination. *Brewster v. State* (1983), Ind., 450 N.E.2d 507, 510. Even if the declarant's in-court testimony is consistent with the out-of-court statement, but the declarant does not specifically acknowledge having made the statement, the foundation may be inadequate. *Hendricks v. State* (1990), Ind., 562 N.E.2d 725. The obvious benefit of the *Patterson* rule is that it permits the admission of testimonial evidence of guilt that otherwise would be lost. *Watkins v. State,* 446 N.E.2d at 959; *Stone v. State* (1978), 268 Ind. 672, 679, 377 N.E.2d 1372, 1375.

Traver claims that he was unable to cross-examine A.G. because she neither acknowledged having given the statements nor offered in-court testimony consistent with them. Traver concedes that the videotaped statements satisfy the first foundational purpose under *Patterson,* because no one disputes the fact that A.G. gave the videotaped statement. Instead, Traver argues that A.G.'s in-court testimony did not implicate Traver and as a result, there was virtually nothing for him to cross-examine.

■ The record reveals that A.G. testified in court that she remembered talking to the social workers "on TV" about Traver and about the "wee-wee game." She pointed to the area between her legs when asked what part of the body Traver used to play the "wee-wee game." She did not recall what Traver did with that part of his body, and did not recall saying that Traver put his "weiner" on her. After this live testimony, the trial court permitted the State to play the videotaped statement for the jury.

The record here contains sufficient evidence of acknowledgement by a young child to support admission of the videotape statement. The child identified Traver as the person who had played the "wee-wee game" with her, and testified that Traver had used the area between his legs to play that game. The live testimony contained sufficient information implicating Traver and demonstrated sufficient acknowledgment of the content of the videotape statement that Traver could have conducted, had he chosen to, a full and complete cross examination. Even though the in-court testimony was not as detailed as the videotape statement, we conclude that, considering A.G.'s testimony as a whole and taking into account age and minimal understanding, the trial court properly admitted the videotape. *Wyrick v. State* (1989), Ind., 533 N.E.2d 118, 120; *Edwards v. State* (1986), Ind., 500 N.E.2d 1209, 1211.

■ On the other hand, J.T.'s in-court testimony is much less detailed than that of A.G. She testified on the stand that she did not recall talking to Newton, the adult participating in the videotaped interview. She did not recall talking in front of the videocamera, and when a portion of the videotape was shown to her, she initially did not recognize herself, but after a few more questions from the State she acknowledged herself and Newton on the tape. She did not recall talking to Newton about Traver. She did not recall what part

of the body was used to play the "wee-wee game." Traver did not cross-examine J.T. at all.

■ Her live testimony does not contain any acknowledgement of having made the videotaped statement or any testimony implicating Traver. Under these circumstances, we conclude that there is not a sufficient foundation for admission of the statement as substantive evidence. Admittedly, there is no dispute that J.T. gave the statement shown in the videotape. Nonetheless, J.T. was not under oath or subject to cross-examination when she gave the out-of-court statement. When she was in court and under oath, she denied any recollection of the statement, refused to repeat any of the allegations contained in it, and denied that Traver had done anything to her. The State urges us to find that because there was evidence that J.T. had been intimidated by her father and grandmother into not telling the truth at trial, her statement should be admissible under *Patterson* even if her in-court testimony did not meet the fundamental requirements. However, the only evidence of any such intimidation was the disputed *Patterson* statements. At trial, J.T. denied having been intimidated. Under these circumstances, we must conclude that Traver did not have an adequate opportunity for cross-examination and, therefore, his convictions for molestation and incest as to J.T. must be reversed.

■ In addition to the videotape statements, there were several other *Patterson* statements admitted at trial over defendant's objection. Ann Newton, Ellen Johnson, Tina Gurney, and Dr. Sabesan were permitted to testify over Traver's objections about conversations with one girl or the other concerning molestation by Traver. All of these statements were oral; none were videotaped. We conclude that these statements were admitted in error because no adequate foundation was established. Both girls were either not asked about these statements on the stand, denied making them, or did not recall making them. Without this acknowledgement, these oral statements should not have been admitted under *Patterson* because there was no foundation for their admission. We conclude that the erroneous admission of these oral hearsay statements so prejudiced Traver that the conviction for molestation of A.G. must be reversed as well.

■ This Court has a duty to assess the probable impact of erroneously-admitted evidence. *Short v. State* (1982), Ind., 443 N.E.2d 298, 308. Introduction of inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *Watkins v. State* (1984), Ind., 460 N.E.2d 514. However, reversal is compelled if the record as a whole discloses that the evidence erroneously admitted "was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." *Mitchell v. State* (1972), 259 Ind. 418, 424, 287 N.E.2d 860, 863. The person challenging the erroneous admission of evidence has the burden of proving its prejudicial impact. *Watkins v. State*, 460 N.E.2d at 515. Evidence which would support the credibility of a person cannot be said to be harmless when the conviction rested primarily on the credibility of the witness. *See, Mitchell v. State*, 259 Ind. at 424–25, 287 N.E.2d at 864.

■ We conclude that the erroneous admission of this evidence constitutes reversible error because there is a substantial likelihood that the questioned evidence contributed to the conviction. *See Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22. Because there were no physical findings of molestation and no eyewitnesses, the conviction rested in large part upon the credibility of A.G. and Traver. The sum of the adults' hearsay testimony and A.G.'s videotaped *Patterson* statement was much greater than the child's live in-court testimony. The hearsay statements were not merely cumulative, because there is a substantial likelihood that the repetition of the hearsay through adult testimony unfairly and prejudicially created the impression that the adult witnesses were vouching for the credibility of the child. The evidence against Traver was a product of the accusations made by A.G. We must conclude

that the admission of hearsay repeating those accusations was prejudicial error. *Mitchell v. State*, 259 Ind. 418, 287 N.E.2d 860. Therefore, the conviction relating to the molestation of A.G. is also reversed. Although Traver has raised a number of other issues, we need not resolve them because this case must be retried. *Irons v. State* (1979), 272 Ind. 287, 290–91, 397 N.E.2d 603, 605–6.

Accordingly, each conviction is hereby reversed, and this cause is remanded with instructions to grant a new trial.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., concurs and dissents with separate opinion.

GIVAN, Justice, concurring and dissenting.

I concur with the majority opinion in the reversal of appellant's conviction as to the molestation of J.T. I think the majority is correct in its observation and application of the *Patterson* rule.

However, I respectfully dissent from the majority in reversing appellant's conviction as to A.G. As stated in the majority opinion, the trial court did not err in admitting a videotape of an interview with A.G. because of A.G.'s testimony during the trial. Thus there was compliance with the requirements of the *Patterson* rule. Accepting this observation by the majority opinion, I am forced to disagree with their ultimate conclusion that statements by adult witnesses concerning their interviews with A.G. so prejudiced appellant that his conviction as to A.G. must be reversed. When one accepts the testimony of A.G. coupled with the properly-admitted videotape of her prior statements, there is sufficient evidence to sustain appellant's conviction as to A.G.

Even if we assume that the admissions of additional statements made by the adults, as set forth in the majority opinion, were improper, they nevertheless are cumulative to the evidence which was properly presented under the theory of the major-

ity opinion. I therefore would not reverse the conviction as to A.G.