Mark TIMMONS, Appellant,

v.

STATE of Indiana, Appellee.

No. 48S00–8802–CR–00215.

Supreme Court of Indiana.

Jan. 27, 1992.

J. Richard Kiefer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant, Mark Timmons was convicted on two counts of performing sexual deviate conduct with a child then under the age of twelve, I.C. 35–42–4–3, the Class B felony of child molesting. The trial court sentenced appellant to twenty years on both counts with the sentences to run concurrent to each other. He now brings this direct appeal asserting that the trial court erred in permitting Dr. Marilyn Shea, Michael Kelly, and Brenda Turnbloom to testify, over hearsay objection, as to the contents of conversations they each had with T.T. Appellant also contends that his constitutional right to present evidence was infringed upon when the trial court limited the expert testimony of Dr. Ralph Underwager and did not permit Dr. Tyra Phipps to testify before the jury. Appellant further maintains that the trial court erred in giving two jury instructions regarding the degree of certainty required to convict, the giving of which had the effect of confusing and misleading the jury. Finally, appellant asserts there was insufficient evidence to support his convictions.

The following facts were adduced at trial: Appellant and Sheila Stanley were married in July of 1976. On April 7, 1981, their daughter T.T. was born. Stanley testified that in the early winter of 1983, she became suspicious that T.T. was being sexually abused. She stated that despite the fact that she bathed T.T. in the evening, she frequently noticed that in the mornings T.T.'s face smelled like semen, her hair was disheveled, and her lips appeared swollen and red. Stanley further stated that around this time T.T. began to suffer from vaginal and rectal redness. The charging information in this cause was filed in December of 1984, and states that the acts of deviate sexual conduct occurred between January 1, 1983, and June 25, 1984.

On June 25, 1984, Stanley went with her parents and T.T. to see Dr. Marilyn Shea. At trial, Dr. Shea, a psychologist in Clayton, Ohio, testified as to the contents of her conversations with T.T. Dr. Shea testified that T.T. told her that her daddy lays on top of her, puts his mouth between her legs, and kisses her "hinney." She further stated that T.T. told her that her daddy placed his penis in her mouth.

On June 28, Stanley took T.T. to the Madison County Public Welfare Department where T.T. met with caseworkers Judy West and Michael Kelly. Michael Kelly was present when West interviewed T.T. and at trial he testified as to the contents of this interview. Kelly stated that T.T., using anatomically correct dolls, demonstrated how she would take naps with her daddy. T.T. proceeded to put the hand of the child doll on the penis of the adult male doll. Kelly further testified that T.T. showed the child doll putting her head down against the penis of the adult male doll. Kelly stated that T.T. then told West that she kissed her "daddy's peepee."

Brenda Turnbloom, a therapist at the Anderson Psychiatric Clinic, began treating T.T. in August of 1984. Turnbloom continued to see T.T. every two to three weeks through April of 1987. She testified that T.T. told her that her father "put his mouth on her privates" and she had put her mouth on his. Turnbloom stat-

ed that T.T. then used the anatomically correct dolls to demonstrate this.

At trial, appellant made contemporaneous objections to the testimony of Dr. Shea, Kelly, and Turnbloom wherein these witnesses repeated the statements that T.T. made to them. The objections were overruled and these witnesses were permitted to repeat the statements before the jury. Appellant claims that the testimony was hearsay and should not have been admitted into evidence.

T.T., who was three years old at the time of the statements to the three prosecution witnesses and six years old at the time of trial, testified at trial that she no longer lives with appellant because "he did bad things to me." She further testified that appellant touched her in "private places." She stated that she remembered telling Brenda Turnbloom that appellant did bad things to her. However, she testified that she had no recollection of ever having talked with Dr. Shea or Kelly.

We commence our consideration of the trial court's decision to overrule defense counsel's hearsay objections with a definition.

> Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.

*Harvey v. State* (1971), 256 Ind. 473, 476, 269 N.E.2d 759, 760 (citing McCormick on Evidence, § 225 at 696 (1984)). We first consider the testimony of Turnbloom. That testimony described a statement made out of court by T.T., resting for its validity upon the credibility of T.T., and offered to prove the truth of the matters asserted therein, namely several sexual touchings of T.T. by appellant. This testimony was hearsay in the mouth of the witness Turnbloom.

The State argues that this hearsay testimony was properly admitted pursuant to an exception. Under proper circumstances, hearsay statements being offered through a witness who claims to have first hand knowledge of the content of such statements and of the fact that such statements were made, have been considered admissible as substantive evidence where the out of court declarant appears in court and is subject to cross-examination regarding those statements. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

Under this exception the party seeking to use the out-of-court statement as substantive evidence has the burden of establishing the proper foundation which entails the declarant, at trial, acknowledge that he made the statement and offer live testimony consistent with it. *Traver v. State* (1991), Ind., 568 N.E.2d 1009 (quoting *Douglass v. State* (1984), Ind., 466 N.E.2d 721). The statement is inadmissible when the declarant denies any memory of having made the statement. *Lambert v. State* (1989), Ind., 534 N.E.2d 235. This Court has held that merely calling a witness to the stand is not sufficient to justify a *Patterson* rule exception as the party wishing to use the hearsay evidence must elicit the necessary foundational testimony from its witness. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125.

A review of the record reveals that the State established the proper foundational testimony with respect to Brenda Turnbloom's hearsay statements. In the present case, T.T. testified that she remembered speaking to Brenda Turnbloom. T.T. stated that she spoke to Turnbloom about appellant making her touch him in his private places. At trial, Turnbloom then provided detailed evidence supporting the specific charges in the information. Turnbloom stated that T.T. told her that appellant "put his mouth on her privates" and that she had put her mouth on his. The record here contains sufficient acknowledgement by the young child victim to support admission of these statements. Even though T.T.'s in-court testimony was not as detailed as the statements Turnbloom attributed to her, we conclude that, considering T.T.'s age and her testimony as a whole, the statements were properly admitted pursuant to the *Patterson* exception as a proper foundation was laid. The trial

court thus did not err in admitting these hearsay statements wherein Brenda Turnbloom recounted the contents of her conversations with T.T.

██ We note that this Court's ruling in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, has terminated the *Patterson* rule. In *Modesitt*, Justice Krahulik, writing for the majority, stated:

> In balance, we hold that, from this point forward, a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person.

*Modesitt*, 578 N.E.2d at 653–654. However, *Modesitt* does not apply to the case at bar in that this case was tried prior to the effective date of *Modesitt*.

██ We next address whether the trial court erred in admitting the testimony of Dr. Shea and Kelly wherein they repeated T.T.'s statements for the jury. Both prosecution witnesses testified that they had first hand knowledge of the content of the statements of T.T. and of the fact that such statements were made. The purpose of the statements was to prove the fact of improper sexual touching. The validity of the statements rested upon the credibility of T.T. The evidence was hearsay. T.T. appeared at trial and testified that she did not recall having spoken with these two prosecution witnesses. The trial court nevertheless permitted Dr. Shea and Kelly to testify over hearsay objections. In this instance the State, as the proponent of the out-of-court statements, failed to lay a proper foundation for the admission of these statements as substantive evidence. Thus, these statements were improperly admitted pursuant to the *Patterson* exception.

██ We find, however, that the admission of these hearsay statements constituted harmless error and we therefore need not consider the State's argument that the testimony of Dr. Shea and Kelly could have been properly admitted into evidence pursuant to I.C. 35–37–4–6. The erroneous admission of hearsay evidence does not automatically constitute reversible error. Indiana Trial Rule 61 provides that errors in the admission or exclusion of evidence that do not affect the substantial rights of the parties are to be disregarded as harmless error. In determining whether error in the introduction of evidence warrants reversal, this Court must assess the probable impact of the evidence upon the jury. *Short v. State* (1982), Ind., 443 N.E.2d 298; *Williams v. State* (1981), Ind., 426 N.E.2d 662.

In this case, the testimony of Dr. Shea and Kelly was the same in character as the evidence offered by Brenda Turnbloom. Turnbloom stated that under her questioning T.T. told her that her father "put his mouth on her privates" and she put her mouth on his. Turnbloom then testified that T.T. used anatomically correct dolls to demonstrate this. Turnbloom's testimony thus provided specific details regarding the acts of sexual deviate conduct charged in the information. The testimony of Dr. Shea and Kelly offered evidence that was no more specific or persuasive than Turnbloom's and was likewise the product of questioning. Here, any error in the admission of the Shea and Kelly testimony is harmless because of the basis for the inference that the charged misconduct occurred, supplied from first hand knowledge in the testimony of Sheila Stanley and T.T., and the descriptive statements made by T.T. to Turnbloom. *Martin v. State* (1974), 262 Ind. 232, 314 N.E.2d 60.

██ Appellant next maintains that his constitutional right to present evidence was infringed upon when the trial court limited the testimony of Dr. Ralph Underwager and did not allow Dr. Tyra Phipps to present evidence to the jury. At trial, Dr. Underwager testified before the jury on the issue of interview bias in general and,

specifically, Dr. Marilyn Shea's interview bias. In an offer to prove, Dr. Underwager testified that Dr. Shea's interview bias made T.T.'s statements unreliable, and that subsequent interviews conducted by Kelly and Turnbloom were tainted by Dr. Shea's interview bias. In a second offer to prove, Dr. Tyra Phipps, an expert in the field of interpersonal communication, testified that due to interview bias T.T.'s statements to Dr. Shea, Kelly, and Turnbloom were unreliable. Appellant contends that the trial court erred in not permitting Dr. Underwager and Dr. Phipps to testify as to these matters.

■ We do not feel the trial court erred in excluding the testimony of Dr. Underwager and Dr. Phipps in this instance. Its purpose was to impeach the credibility of State's witnesses Dr. Shea, Kelly, and Turnbloom by showing that their interviewing techniques were inadequate and thus tainted T.T.'s responses. Appellant, however, had the opportunity to fully cross-examine the State's witnesses with respect to these issues and did indeed fully exercise this opportunity. Further, Dr. Underwager testified extensively at trial with respect to the issue of interview bias. Thus, in light of the fact that the jury heard extensive testimony regarding the subject of interview bias and was given ample opportunity to adjudge the credibility of the State's witnesses via the thorough cross-examination by appellant's counsel, any additional expert testimony would have been cumulative and would not have been helpful to the jury. One criteria in determining whether to allow expert testimony is that it be likely that the expert's informed opinion will aid the jury. *Stewart v. State* (1988), Ind., 521 N.E.2d 675. In this instance, the trial judge was correct in determining that any additional testimony concerning interview bias would be of no aid to the jury.

■ Appellant next asserts that the trial court erred in the giving of two jury instructions that appellant maintains caused him substantial and irreparable prejudice. The first instruction challenged by appellant, final instruction No. 11, read as follows:

If a defendant is innocent, he should not be convicted erroneously, but if a defendant is guilty, he should not be acquitted erroneously. By acquittal of the guilty, a contempt of the law is aroused and the safeguards of society are weakened.

This instruction has been approved numerous times by this Court. *Pointon v. State* (1980), 274 Ind. 44, 408 N.E.2d 1255; *Holliday v. State* (1970), 254 Ind. 85, 257 N.E.2d 679; *Sankey v. State* (1973), 157 Ind.App. 627, 301 N.E.2d 235. In *Murray v. State* (1982), Ind., 442 N.E.2d 1012, this Court approved an instruction that was essentially identical to final instruction No. 11 in the present case. The Court found no error in the giving of the instruction in Murray as it was preceded by a detailed and proper instruction on the presumption of innocence and it was followed by a lengthy and proper instruction on the standard of proof beyond a reasonable doubt. In this instance, the trial court likewise gave detailed instructions on the standard of proof beyond a reasonable doubt and on the presumption of innocence. We thus find no error in the giving of final instruction No. 11 as it was bracketed by instructions concerning the standard of proof beyond a reasonable doubt and the presumption of innocence.

■ Appellant also asserts that the trial court's decision to give final instruction No. 17 constituted error in that the jury might have been misled and concluded that appellant could be convicted if there existed a "possibility" or "mere possibility" that appellant was innocent. Final instruction No. 17 read as follows:

You should not indulge in purely speculative and hypercritical doubts, and the bare possibility that the defendant may be innocent does not raise a reasonable doubt.

This Court has considered the propriety of this "bare possibility" language in other cases. We have not found error in the giving of such an instruction where the trial court includes cautionary language warning the jury that it should not act on pure whim or speculation. *Choate v. State* (1984), Ind., 462 N.E.2d 1037; *Harrison v.*

**1114**

*State* (1978), 269 Ind. 677, 382 N.E.2d 920; *Carter v. State* (1977), 266 Ind. 196, 361 N.E.2d 1208. The trial court issued just such a warning in this case as final instruction No. 17 instructed the jury not to indulge in purely speculative or hypercritical doubts. In addition, the trial court gave final instruction No. 17 in conjunction with other final instructions on the subject of reasonable doubt. Therefore, we find no error in the giving of this instruction.

■ Finally, appellant asserts that there was insufficient evidence to support his convictions for performing sexual deviate conduct with a child then under the age of twelve. In reviewing this allegation, this Court will not weigh the evidence nor resolve questions of credibility, but will look to that evidence and the reasonable inferences therefrom which support the verdict of the jury. *Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558 (citing *Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657). The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Fair v. State* (1969), 252 Ind. 494, 250 N.E.2d 744. In the present case, Brenda Turnbloom provided detailed evidence supporting the allegations in the charging information. Turnbloom testified that T.T. told her that appellant "put his mouth on her privates" and that she had put her mouth on his. This testimony, coupled with the testimony of T.T. and T.T.'s mother, provides sufficient evidence to support appellant's convictions.

Appellant's convictions for performing sexual deviate conduct with a child then under the age of twelve are therefore affirmed.

SHEPARD, C.J., concurs.

GIVAN, J., concurs in result.

DICKSON and KRAHULIK, JJ., dissent.