Derrick HARDIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9204–CR–100.

Court of Appeals of Indiana,
First District.

Sept. 30, 1992.

Jeffery L. Lantz, Evansville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Derrick Hardin appeals his conviction of dealing in cocaine, a class B felony.

We affirm.

The sole issue raised in this appeal concerns the introduction of evidence of extrinsic offenses unrelated to the charged crime. In particular, over Hardin's objection, the State was permitted to offer evidence from each of its two witnesses that Hardin had attempted to facilitate a drug transaction between Sergeant Wilkerson and another individual about a month after the charged offense but the transaction never occurred, and also evidence from Sergeant Wilkerson's contact, Diahann Watson, that she knew to approach Hardin for cocaine because she had purchased cocaine from him in the past.

Much has been written about this topic by the appellate courts in recent days. Suffice it to say, evidence concerning crimes extrinsic to the one for which a defendant is on trial is generally inadmissible if its sole relevance is to show that the defendant's general character is bad and that he therefore has a tendency to commit crimes. *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808. However, evidence of uncharged misconduct may often be admissible because it promotes a legitimate inference about some issue in the cause, notwithstanding its incidental revelation about the defendant's character. *Id.*

One such issue often in dispute is identity, one of the bases asserted by the State at trial and now on appeal for admission of the evidence of Hardin's involvement in the attempted transaction on May 17, 1990, a month after the charged offense. For evidence of an extrinsic offense to be admissible and relevant as proof of identity, the State must show that the similarities between the charged and extrinsic offenses are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. The acts or methods employed must be so similar, unusual and distinctive as to earmark them as the acts of the accused. *Penley*, 506 N.E.2d at 809.

We cannot discern how the evidence of the aborted May 17, 1990, transaction had any tendency to prove Hardin's identity as the individual involved in the charged sale. Other than the fact that the charged offense involved the same three players, Hardin, Wilkerson, and Watson, there are no similarities in the method of sale. When the charged offense occurred, Watson approached Hardin in a parking lot, Hardin directed her to his companion, Al, Watson obtained some cocaine from Al in a car and returned to Wilkerson's car where she delivered the cocaine to Wilkerson. Wilkerson rejected it, claiming that he was tired of Watson's intervention to obtain a cut for herself, and ousted Watson from the car.

Watson made such a fuss that to end the commotion, Hardin stepped forward and assured Watson that he would take care of him. The charged offense then occurred in Wilkerson's car between Wilkerson and Hardin, behind the tinted windows of Wilkerson's car. The evidence of the attempted May 17, 1990 transaction consisted of testimony that on that date, Hardin rode with Wilkerson and Watson to various locations in search of cocaine. Eventually, Wilkerson and Hardin ended up in a darkened apartment, Wilkerson became concerned for his safety, and he walked out without ever consummating a sale from Hardin or anyone else.

■ The State argues evidence of the defunct May 17, 1990 transaction was relevant to show the formulation of a preconceived plan which included both the charged and uncharged transactions. Evidence of drug purchases involving the accused which occur before the charged offense has been held to be proper to show a common scheme or plan to conduct a drug dealing business. *See e.g. Clark v. State* (1989), Ind., 536 N.E.2d 493; *Bombe v. State* (1988), Ind., 525 N.E.2d 336; *Sweet v. State* (1986), Ind., 498 N.E.2d 924; *Manuel v. State* (1977), 267 Ind. 436, 370 N.E.2d 904; *Downer v. State* (1982), Ind., 429 N.E.2d 953; and, *Bartruff v. State* (1988), Ind.App., 528 N.E.2d 110, *trans. denied.*

At best, the evidence of Hardin's involvement with Wilkerson on May 17, 1990, shows Hardin's willingness to assist Wilkerson in finding a source a month after the charged offense. But no source was ever located and no transaction occurred. Unlike the failed transaction in *Sweet,* which occurred between transactions with Sweet, the other evidence in the present case shows Wilkerson's inability to consummate a second transaction with Hardin despite repeated attempts. The evidence thus looks less like a common scheme or plan on the part of Hardin to deal cocaine, but more like a plan on the part of Wilkerson to engage Hardin in sales. We are therefore inclined to follow *Street v. State* (1991), Ind.App., 567 N.E.2d 1180, and conclude that the evidence of Hardin's desire to aid Wilkerson in obtaining cocaine does not establish a preconceived plan *created* by Hardin to deal in cocaine.

■ Lastly, the State argues that evidence of the search for a source was relevant to prove Hardin's predisposition, in anticipation of the defense of entrapment. While it is true, it is not error to admit evidence of an individual's extrinsic offenses once he has indicated an intention to use an entrapment defense, whether or not he ever elicits evidence in support of such a defense, *Allen v. State* (1988), Ind., 518 N.E.2d 800, 802, all parties knew before the evidence at issue here was introduced that Hardin did not intend to make entrapment an issue. Hardin did not appear for trial and his attorney told the court that he would not raise entrapment. He therefore removed any legitimate argument on the State's part that it anticipated entrapment would be an issue in the case.

■ Having failed to find a proper purpose for the testimony that Hardin attempted to arrange a transaction for Wilkerson a month after the charged offense, we consider the admission of evidence Hardin had supplied Watson with cocaine in the past. The State maintains the evidence of past purchases from Hardin by Watson was part of the res gestae of the charged offense. The State suggests that this evidence was necessary to explain to the jury how the police came to suspect Hardin.

Under the res gestae exception, evidence may be introduced which completes the story of the crime by proving its immediate context, even if this evidence also shows that the defendant committed other crimes during the course of the charged offense. Admission of evidence under the res gestae exception generally is left to the sound discretion of the trial court. *Forehand v. State* (1985), Ind., 479 N.E.2d 552, 554.

Watson's association with Hardin was not a part of the immediate context of the charged crime. It had little if any value in proving the elements of the charged offense or the circumstances leading up to it. Watson testified that she unwittingly identified Hardin for undercover police officer Wilkerson because she had been good

friends with Hardin for a long time and she had made purchases from him in the past. The evidence of her prior purchases from Hardin was therefore not necessary to explain how police came to focus upon Hardin; Watson led them to Hardin. Why Watson went to Hardin need not have been explained to the jury at all. Moreover, even if this evidence were relevant to prove the res gestae of Hardin's crime, relevant evidence should nonetheless be excluded if it serves no other purpose than to prejudice the defendant in the minds of the jury. *Miller v. State* (1982), Ind., 436 N.E.2d 1113, 1120.

Evidence of earlier criminal activity was admitted in *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, to explain how police came to suspect the defendant Lopez. But this evidence did not implicate Lopez, only a liaison to him. Therefore, *Lopez* does not require a different conclusion than the one we have reached: the trial court should not have permitted Watson to testify concerning her prior involvement in drug transactions with Hardin.

When there has been error in the admission of evidence, we must review the evidence as a whole to determine whether the error had a substantial influence on the result. If we are left with grave doubt, the conviction cannot stand. *Miller,* 436 N.E.2d at 1114 citing *Kotteakos v. United States* (1946), 328 U.S. 750, 764–67, 66 S.Ct. 1239, 1247–49, 90 L.Ed. 1557. The State's evidence consisted of the testimony of Sergeant Wilkerson, who actually made the transaction, and Diahann Watson. Watson corroborated Wilkerson's account of the circumstances leading up to the buy, including Hardin's directions that she make the transaction with Al and that, when Wilkerson kicked her out of the car, she returned the cocaine she had acquired from Al to Hardin. Wilkerson furnished the critical details of how Hardin supplied him with what was purported to be an eight ball of cocaine in exchange for cash. Hardin did not testify or present evidence to refute the State's case. And, while Hardin's attorney effectively cross-examined Wilkerson and Watson, these examinations did not disclose any real discrepancies in their testimony and earlier statements or motives to falsify. Consequently, while the erroneously admitted evidence might have served to bolster the credibility of the State's witnesses, this is not a close case in the sense that the jury must reconcile conflicting accounts of the same events.

Moreover, we are confident the testimony of Hardin's past relationship with Watson was not particularly harmful because it served only to confirm an inference from the evidence legitimately there, namely, that Watson, who was an addict or "geeker," and who hoped to acquire some cocaine for herself by finding a supplier for Wilkerson, would arrange the buy with a person she believed could supply her with cocaine. The jury could likewise infer that Hardin had a supplier; his unproductive efforts at finding a source for Wilkerson did nothing more than confirm that Hardin associated with persons known to possess cocaine and had access to it, again evidence which is cumulative of that already before the jury through the testimony of Watson and Wilkerson that Hardin was with Al and directed them to him when they approached to purchase cocaine.

We are persuaded for these reasons that error in the admission of testimony which might tend to incriminate Hardin in extrinsic offenses does not raise grave doubt about the fairness of the result reached by the jury or necessitate reversal.

Judgment affirmed.

SHARPNACK, C.J., and RATLIFF, J., concur.