**Derrick HARDIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

Nos. 82S01–9303–CR–391, 82A01–9204–CR–100.

Supreme Court of Indiana.

March 29, 1993.

Jeffery L. Lantz, Jon Aarstad, Evansville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

## ON CRIMINAL PETITION TO TRANSFER

DeBRULER, Justice.

Appellant Derrick Hardin was convicted in a trial by jury of the offense of dealing in cocaine, Ind.Code § 35–48–4–1, a class B felony. The trial court sentenced Hardin to ten years in prison. The Court of Appeals, First District, affirmed the conviction. *Hardin v. State* (1992), Ind.App., 600 N.E.2d 947. Hardin petitions our Court for transfer, alleging trial court and appellate error. We grant transfer.

### STATEMENT OF THE FACTS

During the spring and summer of 1990, Indiana State Police Trooper Myron Wilkerson worked as an undercover investigator for the state police Narcotics Division. Wilkerson's assignment was to identify drug dealers in the city of Evansville and secure illegal drug transactions with them, in order to arrest those dealers at a later time. In late March 1990, Wilkerson met Diahann "Cookie" Watson through Renee Barksdale, Wilkerson's confidential informant. Watson was a drug user. At that time, Wilkerson did not reveal that he was an undercover police officer to Watson. Wilkerson intended to use Watson to make contact with drug dealers.

On the afternoon of April 3, 1990, Wilkerson indicated to Watson that he was in the market to purchase some cocaine. Watson advised Wilkerson that later that day, she was going to meet Derrick "Little D" Hardin, the appellant-defendant, in order to purchase some cocaine for herself. Wilkerson asked if he could make a pur-

chase from Hardin, because Wilkerson was attempting to locate a source. Watson told Wilkerson that she would take him along.

That evening, when Trooper Wilkerson picked up Watson, Watson told him that they had to go to the Oakdale Housing Projects to meet Hardin. When the pair arrived at the projects, they discovered that Hardin was not there. The testimony conflicts as to how the duo located Hardin; however, both Wilkerson and Watson agree that they were directed to go to Tinker's Lounge, a bar in Evansville. Wilkerson and Watson drove to Tinker's Lounge, where they eventually located Hardin. Hardin was in the bar's parking lot, seated in a 1981 burgundy Oldsmobile. After exiting Wilkerson's vehicle, Watson approached the Oldsmobile, spoke with Hardin for about a minute, then returned to Wilkerson. Watson told Wilkerson that Hardin was afraid someone was following him that night, and that he wanted to return to the projects. Wilkerson and Watson were to follow Hardin.

Wilkerson and Watson arrived at the projects a short time after Hardin. Wilkerson observed Hardin and another person walking along the southwest corner of the housing projects. Hardin motioned for Wilkerson to move his car to a parking lot adjacent to the projects. After Wilkerson parked his car, Watson once again disembarked, approaching Hardin and the other individual (whom Watson could only identify as "Al"). Watson got into another car with Al, then returned to Wilkerson a short time later with an "eight-ball" of cocaine. An "eight-ball" is a one-eighth ounce of cocaine, or approximately 3.5 grams.

Watson attempted to complete the sale to Wilkerson, but Wilkerson refused to accept the cocaine, complaining that Watson had "cut" the cocaine. Wilkerson's complaint was that Watson had taken the cocaine, subtracted a small amount of cocaine for her own use, and mixed another substance with the remaining portion, in order to bring the remaining cocaine to its original weight. Wilkerson and Watson argued loudly, then Wilkerson kicked Watson out of the car. Wilkerson's refusal was a ruse

to attempt to lure the alleged cocaine dealers into a direct transaction. Apparently, the ruse worked.

The commotion of Wilkerson's refusal attracted Hardin to Wilkerson's vehicle. When Wilkerson kicked Watson out of the car, Hardin got inside and asked what was wrong. Wilkerson complained to Hardin that Watson was cutting the cocaine, and that Wilkerson would rather deal directly with Hardin. Hardin agreed to this arrangement. While in the car, Hardin sold Wilkerson a quantity of cocaine. Wilkerson asked Hardin for an eight-ball. Hardin produced seven small bags of white powder, representing that each bag contained one-half gram. Hardin handed Wilkerson the seven bags, receiving $260.00 in the transaction. Subsequent laboratory analysis confirmed that each bag contained cocaine.

On September 4, 1990, the Vanderburgh County Prosecutor's Office filed an Information charging Hardin with Dealing in Cocaine. Specifically, the information charged that on or about April 4, 1990, Derrick Hardin a/k/a "Little D" did knowingly deliver Cocaine to Myron Wilkerson.

## ISSUES

On appeal, Hardin raises a number of issues. He contends that the trial court erred when it admitted evidence of instances of uncharged misconduct. He also argues that the trial court's jury instructions regarding the instances of uncharged misconduct improperly focused the jury's attention on the inadmissible evidence. In this appeal, we reach these issues and the question of harmless error.

Hardin's central claim in this appeal is the one challenging the propriety of the evidence of his uncharged misconduct. Specifically, that conduct concerned Hardin's alleged drug dealings and transactions. Trooper Wilkerson testified that on May 17, 1990, one month after the date of the charged offense, Hardin had arranged for Wilkerson to purchase one-half ounce of cocaine from a third individual, Toshio Roach, but that the transaction never transpired. Over Hardin's objection, the trial

court admitted this testimony to prove the defendant's identity, and to prove a common scheme or plan. Record at 195–96. The second instance of past uncharged conduct that the trial court admitted involved unspecified transactions with Diahann Watson. Watson testified that she had bought cocaine from Hardin a number of times prior to the date of the charged offense. Over Hardin's objection, the trial court allowed the testimony of Hardin's previous dealings to prove Hardin's identity, because Hardin did not appear for trial and was tried in absentia. *Id.* at 286.

Hardin also alleges that three of the trial court's final instructions to the jury improperly affected the verdict. Hardin objected to these instructions at trial, linking his objections to the instructions with his objections to the evidence of his past uncharged misconduct.

Jury instruction seven reads, in part:

Evidence has been received that the defendant mäy have been involved in delivery of controlled substances other than that charged in the information. This evidencne [sic] has been received solely on the issue of motive to obtain money and predisposition to commit the offense charged. This evidence is to be considered by you only for the limited purpose for which it was received.

*Id.* at 419. At trial, Hardin objected to instruction seven, because the court instructed the jury to use the questionable evidence for an improper purpose. On appeal, Hardin contends that the word "predisposition" means "propensity," and that evidence of a defendant's propensity to act in conformity with proven character traits is generally inadmissible.

Jury instruction fourteen reads:

Evidence of other crimes or criminal acts other than those charged is generally inadmissible as proof of the guilt of the defendant, such evidence may properly be introduced for the purpose of showing intent, motive, purpose, identity, or common scheme or plan. This evidence is to be considered by you only for the limited purpose for which it was received.

*Id.* at 427. Hardin objected to instruction fourteen, because it directed the jury to consider the potentially inadmissible evidence of Hardin's past uncharged misconduct.

Jury instruction fifteen reads:

Evidence has been introduced that the defendant may have been involved in a crime other than that charged in the information. This evidence, if proved, has been received solely on the issue of the defendant's credibility.

*Id.* at 428. Hardin objected to instruction fifteen, because it charged the jury to consider the evidence of past uncharged misconduct for the purpose of judging Hardin's credibility. Hardin contends that because he had not testified at trial, his credibility was not at issue, so any evidence presented to impeach his credibility was improperly admitted.

## I. Evidence of Uncharged Misconduct

■ Clearly, relevancy is central to admissibility. Evidence is relevant if it tends to prove or disprove a material fact or sheds any light on guilt or innocence of the accused. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1088. However, sometimes a trial court may exclude even relevant evidence at trial, due to possible prejudicial effect that outweighs the probative value of the evidence. *See Lannan v. State* (1992), Ind., 600 N.E.2d 1334.

For many years, Indiana held that evidence of a defendant's prior acts of uncharged misconduct was inadmissible to prove the defendant's guilt. *Barger v. State* (1992), Ind., 587 N.E.2d 1304, 1309. This Court has held:

The notion that the State may not punish a person for his character is one of the foundations of our system of jurisprudence. Evidence of misconduct other than that with which one is charged ("uncharged misconduct") will naturally give rise to the inference that the defendant is of bad character. This, in turn, poses the danger that the jury will convict the defendant solely on this inference.

*Penley v. State* (1987), Ind., 506 N.E.2d 806, 808. The rationale for this rule is

predicated upon our fundamental precept that every defendant should only be required to defend against the specific charges filed. In instances where evidence of prior uncharged misconduct is admitted at trial, a defendant would be forced to refute these allegations as well as defend against the crime specifically charged. If a court were to indiscriminately admit proof of criminal activity beyond that specifically charged, then the burden on the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused. *See Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345–46.

Exceptions to this exclusionary rule existed. Evidence of past uncharged misconduct was admissible upon specific material issues of the case, such as intent, motive, purpose, identity, or common scheme or plan. *Barger,* 587 N.E.2d at 1309. This Court focused on the application of the exclusionary rule in the recent case *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. In *Lannan,* Chief Justice Shepard, writing for the court, looked to the dissent in *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22. In *Kerlin,* the dissent argued that "evidence of other offenses cannot be admitted merely in an attempt to show some predisposition of the accused to commit criminal acts or to establish some likelihood that he might do so." *Id.* at 427, 265 N.E.2d at 26. Agreeing with the dissenting view, Chief Justice Shepard wrote, "Twenty-two years later, [the dissenter] has carried the day. His reasoning tracks the language of Federal Rule of Evidence 404(b), which we hereby adopt in its entirety, effective from this day forward." *Lannan,* 600 N.E.2d at 1339 (footnote omitted).

In *Lannan,* this Court officially adopted Federal Rule of Evidence 404(b) as the rule governing the admissibility of uncharged misconduct in Indiana. F.R.E. 404(b) reads, in part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

The prior Indiana rule generally excluded evidence of past uncharged misconduct, unless the evidence fell within a specific exception. On the other hand, the newly-adopted Federal rule generally admits such evidence. The only instances where the new rule excludes evidence of uncharged misconduct is where it is used for the sole purpose of suggesting to the jury that the defendant possesses certain character traits, as exhibited in the prior uncharged conduct, and that the defendant acted in conformity with those character traits in the present, charged crime. Judge Robert L. Miller, Jr., Address at The Indiana Judicial Conference (December 10–11, 1992) (outline of the address available at The Indiana Judicial Center). "The evidence must be offered for a purpose other than to show character or propensity ('the forbidden inference')." *Id.* The new rule, as stated in F.R.E. 404(b), will apply upon remand to the trial court.

■ Under the former Indiana rule, even where evidence of past uncharged misconduct was admissible under exceptions to the exclusionary rule, that evidence was inadmissible if the danger of unfair prejudice to the defendant substantially outweighed the probative value of the evidence. *Warner v. State* (1991), Ind., 579 N.E.2d 1307, 1310 (citing *Hansford v. State* (1986), Ind., 490 N.E.2d 1083). The Federal Rules of Evidence include a similar provision:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

F.R.E. 403. The language of Indiana case law mirrors that of the federal rule, suggesting that this Court has informally adopted F.R.E. 403 as the prevailing standard for judging potentially prejudicial evidence. In order to remove all doubt, we hereby adopt Federal Rule of Evidence 403

in its entirety. This new rule will also apply in this case upon remand to the trial court.

■ A trial court must employ these two evidentiary rules in conjunction with one another. Whenever the state attempts to introduce evidence of instances of the defendant's uncharged misconduct, the trial court must look to see whether that evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. If the evidence is offered only to produce the "forbidden inference"—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those past bad acts—then the evidence is inadmissible. F.R.E. 404(b) lists some permissible purposes for such evidence, although that list is non-exclusive.

Even if the evidence is admissible under F.R.E. 404(b), the evidence still must meet the test of F.R.E. 403. Although the evidence has some probative value, it might unfairly affect the outcome of the trial, violating the defendant's constitutional due process right to a fair trial. Therefore, the trial court must also apply a balancing test, in order to determine whether the prejudicial effect of presenting the evidence substantially outweighs its probative value.

In the instant case, the trial court applied the Indiana rule as it previously existed and admitted evidence of Hardin's past uncharged misconduct to prove two issues, common scheme or plan, and identity. The court admitted Trooper Wilkerson's testimony concerning the aborted transaction with Toshio Roach to prove that Hardin acted with a common scheme or plan in his cocaine dealings, and to prove Hardin's identity as the cocaine dealer in the charged crime. The court admitted Diahann Watson's testimony about her alleged past drug dealings with Hardin to prove Hardin's identity, because Hardin did not appear at trial and was tried in absentia. The trial court found that the State was presenting the evidence of Hardin's prior uncharged misconduct to prove material issues in the case, not to prove Hardin's bad character.

In reviewing the stated reasons for admitting the evidence of Hardin's uncharged misconduct, this Court notes that F.R.E. 404(b) does not specifically list common scheme or plan as a purpose for admitting evidence of a defendant's uncharged misconduct. "Common scheme or plan" is an exception to the former Indiana rule of inadmissibility of extrinsic evidence. We have recognized that two distinct branches comprise that exception: permitting proof of identity by showing the defendant committed other crimes with identical modus operandi, and permitting proof of an uncharged crime as evidence of a preconceived plan which included the charged crime, also known as proof of res gestae. *See generally, Penley,* 506 N.E.2d at 809. F.R.E. 404(b) employs the similar terms of "plan" and "identity.

The modus operandi branch allows proof of identity by showing that the similarities between the prior, uncharged crime and the present crime are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. *Penley,* 506 N.E.2d at 808. Mere repetition of similar crimes does not by itself warrant admission of the evidence of those crimes under the modus operandi rule. The acts or methods employed in both crimes must be so strikingly similar as to comprise a "signature" of the accused. *Brown v. State* (1991), Ind., 577 N.E.2d 221, 226. Proof offered pursuant to the modus operandi exception appears to be consistent with the strictures of F.R.E. 404(b).

The res gestae branch of the common scheme or plan exception allows admission of prior uncharged acts that are evidence of a preconceived plan, which included the charged crime. The prior offenses "must tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and charged crime." *Malone,* 441 N.E.2d at 1347. In *Lannan,* we further elaborated on this exception. The Court held that evidence of uncharged crimes

falls within the res gestae exception where each of those crimes was part of an *uninterrupted transaction. Lannan*, 600 N.E.2d at 1340 (citing *Wilson v. State* (1986), Ind., 491 N.E.2d 537) (alteration in original).

In the present case, the evidence does not conform to either branch of the common scheme or plan exception. The evidence was not properly admissible under the modus operandi branch of common scheme or plan. The State has not shown that Hardin committed the past uncharged misconduct and the present, charged crime using methods so similar as to comprise Hardin's signature. The record does not reflect any precise methods Hardin may have used in the uncharged activities. Nothing appears to be strikingly similar between the charged crime and the uncharged misconduct. Indeed, the record reflects no more than the allegations that Hardin acted badly on previous occasions. At best, the charged and uncharged transactions appear to be mere repetition of crimes.

We likewise find that the evidence does not conform to the res gestae branch of the common scheme or plan exception. Although the character of the crimes was similar in that it involved drug transactions, the time and the place of the separate crimes were not sufficiently related to establish some plan that embraced both crimes. The present, charged crime and the drug dealing activities, alleged in Trooper Wilkerson's and Diahann Watson's testimony, were not a part of the same, uninterrupted transaction. Over one month in time separated the two acts. Also, the charged crime occurred at a location that was distinct, separate, and somewhat distant from the uncharged, alleged transaction. In fact, in the uncharged action, no drug transaction occurred. Further, a third party, not Hardin, was the drug seller in the uncharged action.

Accordingly, we hold that the trial court could not have admitted evidence of Hardin's uncharged misconduct under the common scheme or plan exception. The evidence does not show that Hardin acted with a distinct modus operandi, and the separate crimes do not fit within the res gestae exception.

The trial court also allowed the evidence of Hardin's prior uncharged misconduct to prove Hardin's identity in the charged crime. In this context, evidence submitted to prove identity must show who perpetrated the charged crime. The evidence of uncharged misconduct before and after this charged crime simply does not tend to prove that Hardin was the person who sold cocaine to Wilkerson, and on trial. Finally, and in sum, the evidence does not fit into either of the two branches of the common scheme or plan exception, or into the identity exception permitted under the former Indiana law applied by the trial court. Because the evidence of Hardin's uncharged prior misconduct was admitted for purposes this Court finds to be improper, as discussed above, we hold that the trial court erred in admitting it.

## II. Jury Instructions

Hardin asserts that the trial court should not have read three of its instructions to the jury, because the instructions either misstated Indiana law or compounded the alleged error of admitting evidence of Hardin's prior uncharged misconduct. In reviewing a trial court's decision to grant or refuse a tendered instruction, the test applied is 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Boyd v. State* (1991), Ind., 564 N.E.2d 519, 522 (citing *Reinbold v. State* (1990), Ind., 555 N.E.2d 463).

Hardin objected to instruction seven, in part because it stated that the jury should consider evidence of Hardin's prior uncharged misconduct as proof of his predisposition or propensity to commit the charged crime. As discussed above, evidence of other offenses cannot be admitted merely in an attempt to show some predisposition of the accused to commit criminal

acts or to establish some likelihood that he might do so, absent some exception to this rule. Instruction seven specifically directed the jury to consider the evidence of Hardin's other offenses for that forbidden purpose.

It appears from the record that the court prepared this instruction in anticipation of the defendant offering an entrapment defense. In instances where entrapment is presented as a defense, the state may introduce evidence of the defendant's character to rebut the entrapment defense. The state may show a defendant's predisposition to commit the charged offense in order to show that the defendant was not induced to commit the crime, and that the defendant was ready, willing, and able to commit the crime, despite any police involvement. *See Gray v. State* (1991), Ind., 579 N.E.2d 605. Here, Hardin did not raise the defense, either implicitly or explicitly; Hardin did not try to prove that Trooper Wilkerson induced him to commit the charged crime, cocaine dealing. The State was therefore not entitled to show Hardin's predisposition. The record does not reflect the necessary evidence to support giving this instruction. The record does reflect that during the hearing on final instructions, the trial court withdrew or attempted to withdraw its own instructions on entrapment. Supplemental Record of Proceedings at 2. The trial court failed to withdraw this critical, improper instruction, one that the jury may have followed.

Hardin objected to instruction fourteen, again in part because it directed the jury to give consideration to the evidence of Hardin's uncharged misconduct, evidence that Hardin contended was inadmissible. Above, we held that the evidence was erroneously presented to the jury. Instructions that are based upon evidence that is improperly admitted are themselves improper. *Williams v. Atkinson* (1899), 152 Ind. 98, 102, 52 N.E. 603, 604.

Hardin objected to instruction fifteen, because it commanded the jury to consider the inadmissible evidence when determining Hardin's credibility. Again, the evidence does not support the giving of this instruction. Hardin did not testify at trial, because he did not appear at trial. Because Hardin did not testify, his credibility as a witness was not in question. The evidence in the record did not support the giving of such an instruction. Therefore, the trial court erred in giving instruction fifteen to the jury.

## III. Error Analysis

Not all error provides grounds for reversal. If a trial court commits some error, that error might not affect the outcome of the trial. We deem such errors harmless. Accordingly, we must appraise the harm done. *See Penley,* 506 N.E.2d at 808.

Hardin complains of an error in the application of state evidentiary and procedural laws, rather than federal constitutional errors. Individual states must apply their own harmless error rule to errors of state law. William F. Harvey, Indiana Practice: Rules of Procedure Annotated 263 (citing *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)).

Indiana Trial Rule 61 specifies Indiana's harmless error standard:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every state of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In utilizing the T.R. 61 standard, this Court has interpreted the rule and refined its application. T.R. 61 provides that errors in the admission or exclusion of evidence that do not affect the substantial rights of the parties are to be disregarded as harmless error. In determining whether error in the introduction of evidence warrants reversal,

this Court must assess the probable impact of the evidence upon the jury. *Timmons v. State* (1992), Ind., 584 N.E.2d 1108, 1113 (citing *Short v. State* (1982), Ind., 443 N.E.2d 298. To decide if the erroneous admission of prejudicial evidence of extrinsic offenses is harmless, we judge whether the jury's verdict was substantially swayed. *Warner*, 579 N.E.2d at 1311. If the error had substantial influence, "or if one is left in grave doubt, the conviction cannot stand." *Id.* (citing *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, 232 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946))). When alleging trial court error and arguing for reversal, an appellant must show error and impact upon the appellant's substantial rights to prevail.

█ In the present case, Hardin has shown error in admitting evidence of uncharged misconduct, and error in the giving of certain jury instructions. The evidence was admitted to prove identity and common scheme or plan, but the evidence was probative of neither, and was thus erroneously admitted. Further, the harmful effect of such errors was compounded by the jury instructions that directed the jury to use the evidence for improper purposes (showing Hardin's predisposition and impeaching his credibility). The instructions focused the jury's attention on the impermissible evidence, and specifically authorized its consideration. As discussed above, the jury's consideration of this evidence, as sanctioned by the jury instructions, effectively undermined Hardin's presumption of innocence at trial, without shedding any light on his guilt or innocence.

█ Generally, cumulative evidence is not prejudicial error. *Traver v. State* (1991), Ind., 568 N.E.2d 1009. However, a reversal is compelled if the record as a whole discloses that the evidence erroneously admitted "was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." *Id.* at 1013. Here, Trooper Wilkerson was the sole eyewitness to the precise illegal transaction in the car. Wilkerson made as many as seventy-five such hand-to-hand transactions in the spring and summer of 1990. Diahann Watson, though not an eyewitness to the activities in the car, was able to place Hardin at the scene of the crime. She was not a stable observer. The State was required to rely upon a photograph of Hardin at trial, since Hardin did not appear. Such evidence is regarded as adequate to prove identity, but seldom overwhelming. *See generally, Murphy v. State* (1990), Ind., 555 N.E.2d 127. Under these conditions, the impermissible evidence would have girded the State's case in the mind of the jury by revealing Hardin to be an unworthy and undeserving individual.

Upon consideration of the State's case, we cannot say that the error was harmless. We conclude that there is a substantial likelihood that the error in admitting evidence of Hardin's uncharged misconduct, compounded by the error in the giving of instructions seven, fourteen, and fifteen, contributed to the verdict of guilty and adversely impacted Hardin's substantial rights, impinged on his right to a fair trial, and was overly prejudicial.

## CONCLUSION

For the reasons listed above, we vacate the judgment of the Court of Appeals, and reverse the judgment of the trial court. We remand this cause for a new trial, consistent with our above holdings.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents with opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion which holds that the error committed at the trial level was reversible error. I agree with Judge Robertson's analysis of this case as reported at 600 N.E.2d 947. I consider the evidence of appellant's guilt to be overwhelming in this case and agree with Judge Robertson that although some evidence was improperly admitted, it could not reasonably have been perceived as influencing the jury.

I would affirm both the Court of Appeals and the trial court.