Jaime Andres HERRERA,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–9807–CR–352.

Court of Appeals of Indiana.

May 21, 1999.

Jeff Schlesinger, Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Jaime Andres Herrera ("Herrera") appeals his conviction, after a jury trial, of Conspiracy to Commit Murder, a class A felony.[1] We affirm.

### Issues

Herrera raises four issues which we restate as follows:

I. Whether the trial court erred by permitting the admission of evidence that Herrera · had been incarcerated while awaiting trial on a charge of Murder at the time of the charged conspiracy to commit murder.

II. Whether the trial court abused its discretion by denying Herrera's two motions for a mistrial prompted by testimony referencing the murder charged in the separate prosecution.

III. Whether the trial court erred by overruling Herrera's objection to the admission of certain handwritten documents purportedly prepared by Herrera.

IV. Whether the trial court abused its discretion by denying two additional motions for mistrial based on the prosecutor's final argument.

### Facts

The evidence most favorable to the verdict reveals that Herrera was incarcerated in jail awaiting trial on a charge of Murder. (R. 9, 63, 75, 188). Due to the nature of the charged offense, Herrera could not be released to bail. (R. 104). While in jail, Herrera discussed the pending murder charge with another inmate ("Co-conspirator"). (R. 199). Herrera told Co-conspirator that he had bragged about committing the murder to three of his former co-workers. (R. 199–200). These co-workers had then been listed as witnesses for the State in the prosecution against Herrera. (R. 9, 200).

Herrera hired Co-conspirator to murder the three witnesses, agreeing to pay him $5,000.00. (R. 200, 202–03). Herrera wrote out numerous pages for Co-conspirator describing the three witnesses, where they lived, where they worked, and what kind of

---

1. IND.CODE § 35–42–1–1 (Murder); IND.CODE § 35–41–5–2 (Conspiracy—conspiracy to commit murder is a Class A felony).

cars they drove. (R. 203–04). Co-conspirator mailed these papers from the jail to his home and ultimately turned them over to the police. (R. 214). Based on Herrera's requests, Herrera's friends and relatives provided Co-conspirator with $5,000.00. (R. 211–12).

Before trial, Herrera filed a motion in limine seeking to exclude evidence that he had been incarcerated on a charge of Murder on the basis "that the pending charge was murder creates a substantial risk that it will be viewed as propensity evidence, and the risk of prejudice outweighs its probative value." (R. 75). In this motion, Herrera conceded "[t]he fact that the defendant was facing charges for which the intended targets of the conspiracy were witnesses may be relevant as motive evidence." (R. 75). In order to explain his presence in jail at the time of the alleged conspiracy, Herrera offered to concede that he had been incarcerated in jail without the possibility of bail on a charge which carried a potential penalty of thirty to sixty years imprisonment. (R. 104, 173). As will be discussed below, Herrera's motion in limine coupled with an evidentiary concession was predicated upon his reading of our decision in *Sams v. State,* 688 N.E.2d 1323 (Ind. Ct.App.1997), *trans. denied,* which was based on the United States Supreme Court decision of *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). (R. 154). The trial court was persuaded by Herrera's argument and granted the motion in limine, ruling, in effect, that the witnesses were not to mention the word "murder" with respect to the reason for which Herrera was incarcerated. (R. 171–74, 197). The trial court clarified its ruling by stating that Co-conspirator could discuss the details of the conspiracy which would necessarily reference the murder. (R. 173–74).

Co-conspirator testified that he had seen Herrera prepare the handwritten documents and that they were in substantially the same condition as when Co-conspirator received them. (R. 220). The handwritten documents were admitted into evidence over Herrera's objection. (R. 226).

During trial, Co-conspirator referred to the murder victim as "the person who passed away." (R. 204). Co-conspirator later referred to the papers Herrera had prepared which "detailed about the killing and all that." (R. 293). Herrera moved for a mistrial on both occasions. (R. 205, 293). The motions were denied. (R. 205, 293).

During cross-examination of Co-conspirator, Herrera attempted to establish that Co-conspirator's testimony had been procured by an agreement with the State in exchange for leniency. (R. 281 –82). During closing arguments, the prosecutor attempted to explain the understanding with Co-conspirator as follows:

> [L]et's face reality, you know [Co-conspirator] got a break. . . . You heard [Co-conspirator] say he was hoping that by telling the police he would get a break. There was a case dismissed, he assumed that was why.

(R. 428). The prosecutor went on to say:

> The case is dismissed. He's out there floating around and there's no control over him, does that sound like an agreement to you?

(R. 428). Outside the presence of the jury, Herrera objected on the basis that Co-conspirator was incarcerated in Illinois and was not "out there floating around." (R. 429). The trial court instructed the prosecutor to clarify her statement. (R. 429). The prosecutor continued her argument as follows:

> With regard to what [Co-conspirator] was facing, any deal or anything that he was going to get from this, there was no control over him. There was no way of saying, hey, we've got you on a short leash. And you know what, ladies and gentlemen, when you sit down and you think about that, first of all, the point is, whether he got anything or whether he didn't get anything, the information he gave to the police he gave to them before anything happened. That's number one. . . .

(R. 430). After being instructed by the trial court to provide further clarification, the prosecutor stated:

> When I said, ladies and gentlemen, we don't have [Co-conspirator] on a short leash, we had no control over him in our case. We have subpoena power. We have

the ability to go obtain the presence of a witness. That is clear. But in terms of holding some kind of a penalty or holding something over his head, with regard to any agreement that was hammered out, that did not exist.

(R. 436).

Also during closing argument, the prosecutor stated that Herrera had told the three persons whom he later allegedly conspired to murder that "hey, I shot a man." (R. 421).

At the close of final arguments, Herrera moved for a mistrial based on both the prosecutor's "floating around" and the "hey, I shot a man" statements. (R. 438). These motions were denied. (R. 438).

Herrera was convicted as charged. (R. 139, 142–43). This appeal ensued.

### Discussion and Decision

*I. Evidence that Herrera was Incarcerated for Allegedly Committing Murder*

Herrera asserts that the trial court erred by permitting its order in limine to be violated when witnesses were permitted to testify regarding the murder for which Herrera was incarcerated at the time of the charged co-conspiracy. We disagree.

*A. Introduction of Evidence— Standard of Review*

■■■ The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Bacher v. State,* 686 N.E.2d 791, 793 (Ind.1997); *Thompson v. State,* 671 N.E.2d 1165, 1171 (Ind.1996). A trial court's decision to admit evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Minnick v. State,* 544 N.E.2d 471, 477 (Ind.1989).

*B. Evidence of Uncharged Misconduct*

■■■ Indiana Evidence Rule 404 reads:

**(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, ...

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

(emphasis added). Evidence is excluded under Evid. R. 404(b) only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Hardin v. State,* 611 N.E.2d 123, 128 (Ind.1993). Evidence of uncharged misconduct which is probative of establishing the defendant's motive and which is "inextricably bound up" with the charged crime is properly admissible under Evid. R. 404. *Utley v. State,* 699 N.E.2d 723, 728–29 (Ind.Ct.App.1998), *trans. denied.*

*C. Relevancy—Balancing Test under Evid. R. 403*

■■■ All relevant evidence is admissible except as otherwise provided by law. Evid. R. 402; *Hardin,* 611 N.E.2d at 127 (evidence is relevant if it tends to prove or disprove a material fact or sheds any light on the guilt or innocence of the accused). The trial court has discretion to permit the admission of even marginally relevant evidence. *Utley,* 699 N.E.2d at 728. However, even evidence which may otherwise be admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Evid. R. 403; *Hardin,* 611 N.E.2d at 127. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission and its ruling will be reviewed only for an abuse of discretion. *Poindexter v. State,* 664 N.E.2d 398, 400 (Ind.Ct.App.1996).

*D. Motions in Limine*

■■■ The purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibili-

ty. *Palmer v. State*, 640 N.E.2d 415, 419 (Ind.Ct.App.1994), *trans. denied.* The trial court's ruling on a motion in limine does not determine the ultimate admissibility of evidence. *Clausen v. State*, 622 N.E.2d 925, 927 (Ind.1993). If error is committed by the trial court in admitting evidence that the defendant had sought to be excluded by a motion in limine, the error is in the admission of evidence at trial, not in its ruling on the pretrial motion. *Short v. State*, 443 N.E.2d 298, 308 (Ind.1982).

■ Therefore, even where the trial court grants a pretrial motion in limine to exclude evidence of unrelated criminal activity, the trial court does not abuse its discretion in permitting the introduction of the evidence sought to be excluded when the evidence is properly admissible. *See Everroad v. State*, 571 N.E.2d 1240, 1245–46 (Ind. 1991). The defendant in *Everroad* was charged with Murder. *Id.* at 1242. The trial court granted defendant's motion in limine to exclude evidence of an uncharged theft of an automobile. *Id.* at 1245. We held that the evidence of the automobile theft was properly admissible despite the trial court's ruling on the motion in limine because the evidence was probative of defendant's motive for committing the charged crime. *Id.* Specifically, the evidence revealed that defendant murdered the victim in order to steal three automobiles with titles appearing sufficiently valid to facilitate their sale to third parties. *Id.* at 1245–46.

### E. Sams/Old Chief—Motion in Limine coupled with Evidentiary Concession

■ It is generally true that the prosecution is entitled to prove its case by evidence of its own choice, and a criminal defendant may not stipulate his way out of the full evidentiary force of the case to be presented against him. *Sams*, 688 N.E.2d at 1325 (based on *Old Chief*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574). However, this general rule has virtually no applicability where the point at issue is a defendant's legal status independent of the criminal conduct charged. *Sams*, 688 N.E.2d at 1325. Thus, when a defendant objects to the admission of evi-

dence of the collateral misconduct which resulted in the legal status and offers to concede the legal status at issue, the risk of unfair prejudice flowing from the admission of the uncharged misconduct will necessarily outweigh its probative value. *Id.* at 1326. The *Old Chief* court held that, where defendant had offered to concede his status as a felon in a prosecution for being a felon in possession of a firearm, the trial court abused its discretion under Evid. R. 403 by permitting the prosecution to introduce the full record of Old Chief's prior felony conviction. 519 U.S. at 190–94, 117 S.Ct. at 655–56. Similarly, in *Sams*, we held that, where defendant offered to stipulate that his operator's license had been suspended for life in a prosecution for driving while suspended for life, the trial court abused its discretion under Evid. R. 403 by permitting the State to introduce defendant's entire driving record. 688 N.E.2d at 1325–26.

### F. Analysis

■ *Chief* and *Sams* are readily distinguishable from the case at bar because they involved the concession of the defendant's legal status as an element of the crime charged. *See Old Chief*, 117 S.Ct. at 655 (proof of defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense). On the other hand, Herrera's concession that he had been incarcerated on a charge upon which he could not be released to bail in no way satisfied any element that the State was required to prove.

■ Moreover, the evidence of the murder which was the subject of the other prosecution against Herrera was probative of much more than providing an explanation for why Herrera was incarcerated at the time of the alleged conspiracy. As conceded by Herrera in his written motion in limine, evidence that Herrera was incarcerated on the Murder charge was relevant to explain his motive for engaging in the conspiracy to murder witnesses who were to testify against him in that case. *See id.* (Evid. R. 404(b) guarantees the opportunity to seek the admission of evidence to prove motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident). Therefore, under the present circumstances, Herrera's 403 objection and his evidentiary concession may not prevail over the State's choice to offer evidence showing Herrera's guilt and all the circumstances surrounding the charged offense. *See id.* at 651; *Sams,* 688 N.E.2d at 1325 (defendant may not stipulate his way out of the full evidentiary force of the case against him).

 Consequently, and in any event, Herrera was charged with conspiring with a fellow jail inmate to murder persons who were to testify against Herrera in his prosecution upon the Murder charge—the precise charge for which Herrera was incarcerated at the time of the charged conspiracy. Thus, the evidence that Herrera had been charged with Murder was not offered for the improper purpose of proving that Herrera had acted in conformity with a propensity to commit murder in the commission of the charged conspiracy to commit murder. *See Hardin,* 611 N.E.2d at 128 (evidence is only excluded if offered for the sole purpose of producing the "forbidden inference" that the defendant possesses certain character traits and that the defendant acted in conformity with those character traits in committing the charged offense). Instead, the evidence was highly probative of (if not essential to prove) Herrera's motive for engaging in the charged conspiracy. Therefore, we cannot conclude that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. Accordingly, regardless of the trial court's ruling on Herrera's motion in limine, we cannot conclude that the trial court abused its discretion by permitting the admission of evidence that Herrera had been incarcerated on a charge of Murder at the time of the alleged conspiracy to commit murder.

## II. Motions for Mistrial Based on the Introduction of Evidence of the Murder Charged in the Separate Prosecution

Herrera contends that the trial court erred by denying two motions for mistrial based on

testimony which referenced the murder charged in the separate prosecution. As noted in the FACTS section, Co-conspirator referred to the murder victim as "the person who passed away," and testified that the handwritten papers purportedly prepared by Herrera "detailed about the killing and all that." (R. 204, 293).

### A. Standard of Review—Denial of Motion for Mistrial

As stated in *DeBerry v. State,* 659 N.E.2d 665, 669 (Ind.Ct.App.1995):

A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation and whether to grant a motion for a mistrial is a matter committed to the sound discretion of the trial court. When determining whether a mistrial is warranted, the court on review must consider whether the defendant was placed in a position of grave peril *to which he should not have been subjected.*

(citations omitted, emphasis added).[2] "Therefore, in order to constitute grounds for a mistrial, the violation of the motion in limine must produce inadmissible evidence. . . ." *Taylor v. State,* 496 N.E.2d 561, 567 (Ind.1986) (emphasis original). In *Taylor,* our supreme court held that the trial court did not abuse its discretion by denying a motion for a mistrial based on the admission of evidence of an armed robbery for which defendant was not being tried where the evidence of the armed robbery was properly admissible as part of the res gestae of the sex crimes for which defendant was being tried. *Id.* at 563, 566–67.[3]

### B. Analysis

 The same result obtains in the present case. As noted in Issue I, the evidence of the murder for which Herrera was incarcerated was properly admissible to prove

---

2. Our supreme court has noted that the term "grave peril" adds nothing but confusion to the analysis described above. *See Cox v. State,* 696 N.E.2d 853, 859 n. 6 (Ind.1998).

3. Res Gestae was a component of Indiana's common law rules of evidence which did not survive the adoption of the Indiana Rules of Evidence. *See Porter v. State,* 700 N.E.2d 805, 808 (Ind.Ct. App.1998).

Herrera's motive to engage in the charged conspiracy. Therefore, the evidence of the murder, and Herrera's prosecution therefor, did not subject Herrera to any peril *to which he should not have been subjected.* Thus, the trial court did not abuse its discretion in denying the two motions for mistrial.

### III. Admission of Handwritten Documents

Herrera argues that the trial court erred by permitting the introduction into evidence of the handwritten documents which were purportedly prepared by Herrera himself. Specifically, Herrera argues that the writings were not properly authenticated.

#### A. Authentication of Documents— Standard of Review

 Indiana Evidence Rule 901(a) provides that authentication is a condition precedent to admissibility and is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. The admissibility of documents as exhibits is a matter within the trial court's discretion and will be reversed only upon a showing of an abuse of that discretion. *Lahr v. State,* 640 N.E.2d 756, 761 (Ind.Ct.App. 1994), *trans. denied.* Evidence demonstrating a reasonable probability that the exhibit is what it is claimed to be and that its condition is substantially unchanged as to any material feature is sufficient to establish the condition precedent to admissibility. *Id.*

Under Evid. R. 901(b)(1), a document may be authenticated through the testimony of a witness with knowledge that the document is what it is claimed to be. In *Lahr,* we held that a handwritten note purportedly prepared by the defendant while in jail was properly authenticated by a witness who testified he received it from the defendant. *Id.* at 761.

#### B. Analysis

 In the present case, Co-conspirator testified that he had seen Herrera prepare the documents and that they were in substantially the same condition as when Co-conspirator received them. Therefore, the documents were properly authenticated un-der Evid. R. 901(b)(1) and the trial court did not abuse its discretion in permitting their admission.

### IV. Motions for Mistrial Based on Alleged Prosecutorial Misconduct

Finally, Herrera argues that the prosecutor committed misconduct during closing arguments. Specifically, Herrera argues that the prosecutor did not clear up the misapprehension created by the "out there floating around" statement. Also, Herrera contends that the "hey, I shot a man" statement constituted misconduct based on the argument raised in Issue I to the effect that the evidence of the murder was unfairly prejudicial in the present prosecution for the conspiracy to commit murder. Thus, Herrera contends that the trial court erred by denying his motion for a mistrial based on prosecutorial misconduct.

#### A. Prosecutorial Misconduct— Standard of Review

 As stated in *Everroad v. State,* 571 N.E.2d 1240 (Ind.1991):

> To support a motion for mistrial based upon prosecutorial misconduct, the defense must show that the prosecutor's actions constituted misconduct by reference to established norms of professional conduct, and that the ensuing prejudice placed him in a position of grave peril *to which he should not have been subjected.* Whether the misconduct results in grave peril is determined not by the degree of impropriety involved, but by its probable persuasive effect upon the jury. This effect, in turn, is assessed not by whether its absence conclusively would lead to an acquittal; rather, reversal is required where the evidence is close and the trial court fails to alleviate the prejudicial effect. Even where an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal still may result.

*Id.* at 1244 (emphasis added). The determination of whether to grant a mistrial is within the trial court's discretion; and great def-

erence is accorded the trial court on appeal as it is in the best position to gauge the circumstances and the probable impact on the jury. *Schlomer v. State,* 580 N.E.2d 950, 955 (Ind.1991). Misconduct which is "de minimis in its import" will not warrant reversal. *Everroad,* 571 N.E.2d at 1245.

### B. Analysis

We find no prosecutorial misconduct in the "out there floating around" statement. The statement was made in the context of an explanation of the understanding between the State and Co-conspirator with respect to any consideration Co-conspirator had received in exchange for his testimony against Herrera. The prosecutor conceded that Co-conspirator "got a break" in that a case against him had been dismissed in recognition of his cooperation with the authorities. Although the "out there floating around" statement was confusing, we cannot conclude that it had an appreciable or probable persuasive effect upon the jury. Therefore, the trial court did not abuse its discretion by denying the motion for mistrial.

Next, the prosecutor's "hey, I shot a man" argument referred to the evidence of the statements allegedly made by Herrera to the witnesses whom Herrera later allegedly conspired to murder because they had been listed by the State as witnesses against Herrera in the Murder prosecution. As discussed under Issue I, the evidence of the murder, and Herrera's prosecution therefor, was properly admitted to prove Herrera's motive to engage in the charged conspiracy. (*See* Issue I *supra*). Therefore, the prosecutor's reference to the murder was not misconduct nor did it subject Herrera to any peril *to which he should not have been subjected.* Accordingly, the trial court did not err in denying the motion for mistrial based upon a reference to the evidence in the murder case. (*See* Issue II *supra*).

Affirmed.

FRIEDLANDER, J., and STATON, J., concur.