# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2018, 7:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Gary Whittington, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 26, 2018

Court of Appeals Case No.
82A01-1708-CR-1808

Appeal from the Vanderburgh
Circuit Court.
The Honorable Michael J. Cox,
Magistrate.
Trial Court Cause No.
82C01-1701-F3-361

**Barteau, Senior Judge**

# Statement of the Case

Gary Whittington, Jr., appeals his convictions of three counts of Level 5 felony robbery,[1] three counts of Level 5 felony criminal confinement,[2] burglary as a Level 4 felony,[3] theft of a firearm as a Level 6 felony,[4] and auto theft as a Level 6 felony.[5] He also pleaded guilty to an habitual offender enhancement.[6] He alleges that there is insufficient evidence of a breaking to support his burglary conviction, and that the trial court committed fundamental error when it admitted certain testimony at trial. We affirm.

# Issues

Whittington raises two issues for our review:

> I. Whether the State presented sufficient evidence to sustain his burglary conviction; and
>
> II. Whether the trial court committed fundamental error in admitting certain testimony at trial.

---

[1] Ind. Code § 35-42-5-1(1) (2014).

[2] Ind. Code § 35-42-3-3 (2014).

[3] Ind. Code § 35-43-2-1 (2014).

[4] Ind. Code § 35-43-4-2 (2014).

[5] Ind. Code § 35-43-4-2.5 (2014).

[6] Ind. Code § 35-50-2-8 (2015).

# Facts and Procedural History

[3] Henry Doyle, who worked for Professional Transportation Incorporated (PTI), was driving a company-issued van used to transport railroad crews to trains. The van was equipped with a GPS unit and a drive camera. On January 16, 2017, around 6:30 p.m., Doyle transported Edward Fogarty and Robert Jones, two CSX Transportation employees, to an area just outside of a railroad yard located in Evansville, Indiana, so that the two could board a train. Doyle parked the van to wait for the train. The van was parked for about ten minutes when Jones, who was sitting in the front passenger seat, saw the barrel of a rifle tap on the window.

[4] Doyle, Jones, and Fogarty were ordered by two men to exit the van. One man, later identified as Whittington, was armed with an assault rifle. The other man, later identified as Whittington's twenty-one-year-old son, was wearing a mask and appeared to be armed with a handgun. Whittington told Doyle, Jones, and Fogarty to put their identification and hands on the hood of the van and then took their identification, wallets, and cell phones. Whittington then told the men, "[I]t's your lucky day, I'm going to let you live," and ordered them to walk along the railroad tracks. Tr. Vol. II, p. 146.

[5] Doyle, Jones, and Fogarty complied; however, once they saw the van drive off, they turned around and walked to a nearby house to seek assistance. The homeowners called 911, and deputies from the Vanderburgh County Sheriff's

Department ("VCSD") responded at around 6:50 p.m. The three men were transported to the VCSD to give statements.

[6] Glen Smith owned a lawn care business in Evansville, and the business was located on the same property as his residence. An exterior door led from the driveway into Smith's garage. A nearby second, interior door separated the garage from the kitchen. Smith kept the interior door locked, but did not lock the exterior door.

[7] At around 1:30 a.m., on January 17, 2017, Smith was sleeping in a recliner in his living room because he recently had undergone shoulder surgery. His wife was asleep in the bedroom. Both Smith and his wife woke to a loud noise that was followed by three loud banging sounds. Smith turned on the lights and saw two figures in the garage. He started yelling "get out of here, call 911, get out of here, call 911." *Id.* at 187. Smith then called 911. He noticed that the glass window in the interior door between the garage and the kitchen was broken but that the exterior door to the garage was closed. Smith's wife testified that the exterior door would have been closed that night because it was January.

[8] VCSD deputies arrived approximately eleven minutes after the 911 call was placed, but the two individuals in the garage had already fled. The Smiths discovered that a .22 caliber rifle was stolen from their garage, and a hunting crossbow had been moved to a different location in the garage. Smith told the deputies that he had surveillance cameras located on his property. Surveillance video showed a PTI van entering the Smiths' property and parking and two

individuals exiting the van – one armed with a rifle. The video also showed the same van leaving the property.

[9] Whittington was a former employee of Smith's lawn care business from September of 2012 until June of 2015. He left his employment after a dispute with Smith. Two current employees of the lawn care business watched the January 17th surveillance video and identified Whittington as one of the individuals in the footage.

[10] On the evening of January 17, 2017, Whittington and his son were arrested at the home of Whittington's mother. Whittington's mother gave permission for her home to be searched. A black backpack and black cargo pants were found in the basement. Inside the backpack, which was searched after obtaining a search warrant, were rubber gloves, a black eye patch, a leather holster without a gun, and a cigarette lighter that resembled a gun.

[11] Whittington's son told law enforcement where the PTI van was located and helped law enforcement locate the .22 caliber rifle that was taken from the Smiths' garage. The drive camera that was installed in the van and the GPS unit were recovered. Whittington was depicted on the drive camera footage. Jones, one of the victims of the robbery, was shown a photographic lineup and positively identified Whittington as the individual that robbed the group at gunpoint and pointed a rifle at him.

[12] On January 20, 2017, the State charged Whittington with three counts of Level 3 felony armed robbery, three counts of Level 3 felony criminal confinement,

Level 4 felony burglary, Level 6 felony theft of a firearm with a sentencing enhancement based on his use of a firearm, Level 6 felony auto theft, and an habitual offender enhancement.

[13]    A jury trial was held on May 22 through May 25, 2017. At trial, Whittington's son testified that he and Whittington stole the PTI van and that Whittington drove the van to the Smiths' home; that it was Whittington's idea to break into the Smiths' home to take money; and that while it was Whittington's idea to steal the van and break into the home, Whittington's son was a willing participant.

[14]    A jury found Whittington guilty of three counts of Level 5 felony robbery, three counts of Level 6 felony criminal confinement, Level 4 felony burglary, Level 6 felony theft of a firearm, and Level 6 felony auto theft. Whittington pleaded guilty to the habitual offender enhancement, and the State dismissed the firearm enhancement. The trial court sentenced Whittington to seven years for his Level 5 felony robbery convictions, two and one-half years for his Level 6 felony criminal confinement convictions, twenty-six years for his Level 4 burglary conviction with the habitual offender enhancement, one year for his Level 6 felony theft of a firearm conviction, and one year for his Level 6 felony auto theft conviction. The sentences were to run concurrently for an aggregate term of twenty-six years. Whittington now appeals.

# Discussion and Decision

## *I. Sufficiency of the Evidence*

[15] Whittington first argues there was insufficient evidence to support his conviction for Level 4 felony burglary. Our standard of review for sufficiency of the evidence is well settled. On a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). This Court respects the jury's exclusive province to weigh conflicting evidence. *Id.* It considers only the evidence most favorable to the verdict. *Id.* This Court must affirm if the evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[16] In order to convict Whittington of Level 4 felony burglary, the State was required to prove beyond a reasonable doubt that he broke and entered a building or structure that is a dwelling of another person with the intent to commit a felony or theft in it. Ind. Code § 35-43-2-1(1) (2014). According to Whittington, the State failed to present evidence of a "breaking." Whittington specifically argues the State failed to present evidence of how he and his son entered the Smiths' garage, and evidence that Whittington actually "entered" the Smiths' kitchen.

[17] Our supreme court has held that walking through an open door does not establish "breaking"; however, breaking is established when even the slightest

force is used to gain unauthorized entry, such as opening an unlocked door. *See Cockerham v. State*, 246 Ind. 303, 307, 204 N.E.2d 654, 657 (1965); *Smith v. State*, 535 N.E.2d 117, 118 (Ind. 1989) (citing *Trice v. State*, 490 N.E.2d 757, 758-59 (Ind. 1986)). The element of breaking may be proved entirely by circumstantial evidence. *Utley v. State*, 589 N.E.2d 232, 240-41 (Ind. 1992).

[18] We find from the evidence presented at trial, the jury could reasonably have inferred that Whittington and his son opened the unlocked, exterior door to the Smiths' garage and then entered. Smith's wife testified that the exterior door would have been closed because it was January at the time the incident took place. The garage did contain a window; however, evidence was presented showing that on the night of the incident, the window was closed and a potted plant located in the garage, just inside of the window, had not been knocked over. Whittington's son testified that he and his father entered the Smiths' garage and waited in the garage for the Smiths to go to sleep and that Whittington eventually took the butt of his rifle and smashed the window of the interior door that separated the Smiths' garage from their kitchen. Smith's wife testified that the deadbolt in the interior door was in the "unlock position," but previously had been in a locked position. Tr. Vol. II, p. 171. Whether the State presented evidence that Whittington actually "entered" the Smiths' kitchen from the garage is of no moment, as sufficient evidence was presented to establish Whittington broke and entered the Smiths' garage.

## II. Character Evidence

Whittington asserts fundamental error occurred when the trial court admitted testimony from two witnesses recounting Whittington's statements when he quit his job with Smith's lawn care business. We typically review rulings on the admission of evidence for an abuse of discretion. *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs if the trial court misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it. *Id.*

Whittington, however, did not object at trial to the testimony he now challenges on appeal. Failure to object at trial waives the issue on review unless fundamental error occurred. *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). Fundamental error is an extremely narrow exception that applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The claimed error must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *Taylor v. State*, 717 N.E.2d 90, 93 (Ind. 1999). "This exception is available only in egregious circumstances." *Halliburton*, 1 N.E.3d at 678 (internal quotation marks omitted).

Specifically, Whittington challenges the following testimony from Smith, his former boss, regarding statements Whittington made when he quit:

[Whittington] didn't get demoted, he didn't get a pay raise, at the time he was making $15 an hour for me. He proceeded then to tell me that all I do is F all my employees and take advantage of them, I'm the rich white guy up on the hill, F'g all his employees, and at that time I told him it was time for him to leave. He kept yelling and I had to threaten that I was going to call 911 if he didn't leave, and as he was leaving he was like, just give my paycheck to, I forget who he said, so and so, I don't need the money, they need it more because all you do is F your employees.

Tr. Vol. II, p. 193. He also challenges the following testimony elicited from Russell Alvey, one of Smith's employees, when the State asked Alvey if he recalled the day Whittington quit the lawn care business:

Yes, that morning he came to work and he came in the office and he sat down and basically said he wanted to talk to me and Glen and he had asked for a, he had told us that he thought he deserved a $2 an hour raise and we denied that, and he stood up and he said, well consider today my last day or my two weeks [sic] notice, and he walked out of the office and then he turned around and walked right back in and he said, you know what, today is my last day, I quit, and walked out of the office and started calling the owner of the company several names and walked out of the shop, handed another employee $300 and said, you deserve this because you're not going to make that kind of money working for this guy, and basically we had to ask him to get off the property before we called the law.

Id. at 244. Whittington claims the testimony was inadmissible character evidence barred by Indiana Evidence Rule 404(a). According to Whittington, the testimony "clearly painted Whittington as a criminal with an explosive,

unpredictable, and violent personality" and that commission of the instant offenses was consistent with that character. Appellant's Br. p. 18.

[22] Indiana Evidence Rule 404(a) prohibits using evidence of a defendant's "character or character trait . . . to prove that on a particular occasion the person acted in accordance with that character or trait." This rule is meant to deter a jury from pursuing a path of reasoning that leads to "the forbidden inference," which is that a defendant is guilty of the alleged crime because the defendant possesses a bad character trait. *Herrera v. State*, 710 N.E.2d 931, 935 (Ind. Ct. App. 1999).

[23] In support of his arguments, Whittington equates his case to *Oldham v. State*, 779 N.E.2d 1162 (Ind. Ct. App. 2002), *trans. denied*. Oldham was convicted of murder and carrying a handgun without a license. At trial, the State introduced novelty photos of Oldham with text reading, "America's Most Wanted," "Wanted for: robbery, assault, arson, jaywalking," "Considered armed and dangerous," and "Approach with extreme caution." *Id.* at 1171. On appeal, Oldham asserted the admission of that evidence was fundamental error that prejudiced the jury against him.

[24] The State argued it had introduced the evidence to prove a shirt in the proximity of those pictures was Oldham's shirt, but we determined the State was using the photographs to suggest Oldham was dangerous. Because the manner in which the State introduced the evidence suggested Oldham had the characteristics of one who would have guns and kill another person, its

introduction would require Oldham to refute not only the charged crimes but also the character evidence. *Id*. at 1173. As such, we found the admission of the evidence was fundamental error. *Id*. at 1174.

[25] Whittington also relies on *Rhodes v. State*, 771 N.E.2d 1246 (Ind. Ct. App. 2002), *trans. denied*. In *Rhodes,* this court concluded that the "introduction of improper character evidence was so blatant and so pervasive that it rendered a fair trial impossible" because the State introduced a "flood" of irrelevant character evidence at trial. 771 N.E.2d at 1256. In reaching this conclusion, we noted as follows:

> [the State's] case in chief seemed to be a focused inquiry into [defendant]'s and [defense witness]'s prior misconduct. From inquiries into [defendant]'s driving convictions, alcohol problems, and history of domestic violence to questions concerning the legitimacy of [defendant] and [defense witness]'s child and the circumstances surrounding [defense witness]'s divorce, the Prosecution made a trial about a driving violation into one about [defendant]'s and [defense witness]'s character.

*Id.* We concluded that the admission of the "flood" of irrelevant character evidence constituted fundamental error. Our conclusion, however, was not based solely upon the admission of the defendant's driving record, but rather on the "flood of irrelevant and prejudicial evidence" that "did not just make a fair trial unlikely, it made it impossible." *Id.*

[26] Here, the testimony regarding statements made when Whittington quit his employment was relevant, and there was no flood of irrelevant character

evidence. Thus, *Oldham* and *Rhodes* are distinguishable. The testimony was not offered to prove Whittington acted in accordance with his character but instead was offered under Indiana Evidence Rule 404(b) to prove motive for targeting Smith's house for burglary.[7] Pre-trial, the State filed a notice of Indiana Evidence Rule 404(b) evidence, indicating that it intended to introduce evidence regarding Whittington's resignation from his employment with Smith. Additionally, defense counsel elicited testimony at trial that Whittington was a good employee and that, at one point, Smith "probably" would have rehired Whittington if Whittington had asked. Tr. Vol. II, p. 208. Furthermore, the evidence against Whittington was overwhelming, and the admission of the 404(b) testimony had no prejudicial impact on the jury. The admission of the testimony was not fundamental error.

## Conclusion

[27] Sufficient evidence was presented to support Whittington's conviction for burglary, and the admission of the challenged testimony was not fundamental error. The judgment of the trial court is affirmed.

[28] Affirmed.

---

[7] Indiana Evidence Rule 404(b) prohibits the use of a defendant's "crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"; however, the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

May, J., and Altice, J., concur.