## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tammi Lacy,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 30, 2018<br>Court of Appeals Case No.<br>49A02-1708-CR-1951<br>Appeal from the Marion Superior Court<br>The Honorable Matthew Tandy, Judge Pro Tempore<br>Trial Court Cause No.<br>49G18-1503-F6-8366 |

**Barnes, Judge.**

# Case Summary

[1] Tammi Lacy appeals her conviction for Level 6 felony theft. We affirm.

# Issues

[2] The restated issues before us are:

  I.  whether the trial court properly admitted evidence related to the retail store victim's internal investigation of the theft; and

  II. whether the trial court properly allowed one of the store's detectives to testify as to what he saw on a surveillance video recording of Lacy's conduct.

# Facts

[3] Lacy was employed as a cashier at an Indianapolis Meijer gas station. In October 2014, Meijer store detective Andy Neumeister received information that there were frequent cash shortages at the gas station where Lacy worked. To determine how this was happening and who was responsible for the shortages, Neumeister first determined on what shifts the shortages were occurring and who was working on those shifts. He then reviewed surveillance video footage from those shifts and saw evidence that Lacy was stealing during the process of removing money from the cash register and placing it in the store safe. For example, when reviewing a recording from October 24, 2014, Neumeister observed Lacy remove $160—eight $20 bills—from the cash register and place it into a deposit envelope. Before sealing the envelope, Lacy

went out of the surveillance camera's view, then returned to the register shortly thereafter with the envelope sealed. When performing a proper cash deposit, an employee is supposed to seal the envelope immediately after putting money in it. Lacy wrote on the envelope that it contained $120 in cash, scanned it, and deposited it in the safe. Neumeister retrieved this envelope before it was unsealed and confirmed that it contained only $120, despite Lacy having originally put $160 in it before leaving the surveillance camera's view.

[4] On October 25, 2014, Neumeister was watching live surveillance footage of Lacy and observed her carry out another improper cash "drop" or deposit, which was $40 short. He and Lacy's supervisor then went to speak privately with Lacy. When Neumeister began talking about the frequent cash shortages at the gas station, Lacy initially said she was aware of them but denied that she was stealing. However, when Neumeister informed Lacy that her most recent deposit was $40 short and asked her for the money, Lacy took $40 from her pocket, gave it to Neumeister, and said, "[T]hat's all I took today." Tr. Vol. II p. 149. Lacy told Neumeister that she could not recall how long she had been stealing, but that she had used the money for medical bills, rent for herself and her daughter, a student loan, and paying off $2,000 in credit card debt. When Neumeister told Lacy that the total amount missing was approximately $4,000, she expressed surprise that it had been that much. Lacy then handwrote a confession that she had "taken several thousand dollars from Miejer [sic] and for reasons I really thought were okay." Ex. 2. Lacy also signed a printed confession that Neumeister had prepared, stating in part, "Over the past two

and a half months I have been taking money from my cash register, via my drops. Approximately two to three times a week, two or three times a day. . . . Over that time frame I took approximately $4000.00 dollars." Ex. 3.

[5] On March 10, 2015, the State charged Lacy with Level 6 felony theft. Lacy deposed Neumeister on July 25, 2016. During that deposition, Neumeister said that he "went to our internal audit system and began running shortage reports for that store or that gas station and started narrowing down, you know, who was working, when the shortages were occurring, and who was on the registers," before viewing surveillance footage from the gas station. Tr. Vol. II p. 74. As part of discovery, Lacy requested from the State documentation related to Neumeister's theft investigation. Specifically, defense counsel emailed the deputy prosecutor, "The amount is in dispute. At the last taped statement one deponents [sic] mentioned that there was documentation showing exactly how much money was taken. . . . Do you have it?" App. Vol. II p. 56. When the State failed to produce that documentation, Lacy filed a motion to compel discovery on May 4, 2017. The motion requested that the State be compelled "to produce the internal investigation documentation and any other documentation related to this case." *Id.* at 54. When the State still failed to produce this evidence, Lacy filed a motion to exclude it. On June 20, 2017, the trial court held a hearing on this motion, at which the State represented that it had asked Meijer for the requested documentation four times but had not received it. The trial court granted Lacy's motion to exclude evidence, specifically ruling "that all evidence related to the internal

investigation, any evidence deriving from the investigation including internal investigation documentation, and any undiscovered documentation related to this case be excluded from being introduced at trial." *Id.* at 60.

[6] A jury trial was held on July 13, 2017, before a judge pro tempore who had not ruled on Lacy's motion to exclude evidence. At the outset of Neumeister's testimony, Lacy objected to him testifying about there being any cash shortages at the Meijer gas station, because his knowledge to that effect was based on internal reports and documentation that had been excluded by the trial court's pretrial ruling and because those reports and documentation were hearsay. After preliminary questioning of Neumeister, the trial court overruled Lacy's objection. It stated in part, "He didn't rely on those documents to do his investigation, he created those documents during his investigation. It's not based upon hearsay, it's based upon work that he did." Tr. Vol. II p. 75. The trial court did not directly address Lacy's objection based on the pretrial ruling excluding evidence.

[7] Later in his testimony Neumeister began referring to what he had seen on the store surveillance footage. Before doing so, he (through the State's questioning) explained that he had been trained on how to use and record from the surveillance system, that it was in normal operating condition on the days that he viewed it, that it accurately recorded and reproduced video images, that it records continuously, and that it stores footage for thirty days. As Neumeister began describing what he had seen on the surveillance footage, Lacy objected on the basis that footage had not been introduced into evidence. The trial court

overruled this objection, ruling that Neumeister could testify as to what he had seen on the footage without it being introduced. Neumeister testified that he was able to zoom in and out when watching the footage and that was how he was able to discern the denomination of bills Lacy was removing from the cash register and putting in the deposit bag. However, when a DVD recording of the surveillance footage was introduced into evidence, Neumeister testified that it was of lower quality than the footage he was able to watch and that recordings made from the surveillance system were always of lower quality than the original and lacked the ability to zoom in and out. In fact, it is not possible to see bill denominations on the DVD recording introduced into evidence due to its graininess. Lacy objected to the introduction of the DVD recording into evidence because it was not the same as the original footage, which had not been provided to the defense in discovery. The trial court overruled this objection as well.

[8] The jury found Lacy guilty as charged, and the trial court convicted and sentenced her accordingly. She now appeals.

# Analysis

## I. General Admission of Evidence Related to Investigation

[9] We first address Lacy's argument that essentially all evidence related to Meijer's and Neumeister's internal investigation of her theft should have been excluded at trial, in light of the trial court's pretrial ruling purporting to exclude "all evidence related to the internal investigation, any evidence deriving from

the investigation including internal investigation documentation, and any undiscovered documentation related to this case . . . ." App. Vol. II p. 60. Such exclusion would have left the State with virtually no case to present, as no law enforcement agency conducted an independent investigation in this matter.

[10] We agree with the State that the pretrial ruling was not a final ruling on the admissibility of the evidence. It was more akin to the granting of a motion in limine or motion to suppress. A ruling on a motion in limine does not determine the ultimate admissibility of evidence. *Herrera v. State*, 710 N.E.2d 931, 936 (Ind. Ct. App. 1999). "If error is committed by the trial court in admitting evidence that the defendant had sought to be excluded by a motion in limine, the error is in the admission of evidence at trial, not in its ruling on the pretrial motion." *Id.* Thus, the proper question here is whether the trial court abused its discretion in admitting evidence at trial.[1] *Id.* A trial court abuses its discretion in admitting evidence if its ruling is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Perryman v. State*, 80 N.E.3d 234, 247 (Ind. Ct. App. 2017).

[11] The basis of the pretrial ruling excluding evidence was the State's failure to provide Lacy with documentation relating to Neumeister's investigation into cash shortages at the gas station where she worked. In particular, Lacy wanted

---

[1] Additionally, prior to an entry of judgment, trial courts have the inherent power to amend, modify, or change an earlier ruling, even if there has been a change of judge between the original and subsequent rulings. *See Serletic v. Noel*, 700 N.E.2d 1159, 1161 (Ind. Ct. App. 1998).

access to Meijer's internal auditing reports that revealed the shortages and their extent, which in turn prompted Neumeister's viewing of the surveillance footage and his identification of Lacy as the cause of the shortages. Although those reports were not introduced at trial, consistent with the pretrial ruling, Lacy asserts that *all* evidence or testimony flowing from those reports—i.e., the full extent of Neumeister's testimony—should have been excluded at trial.

[12] The exclusion of evidence at trial because of a discovery violation by the State is an extreme remedy that is warranted only if the State's actions were deliberate and its conduct prevented a fair trial. *Kennedy v. State*, 934 N.E.2d 779, 784 (Ind. Ct. App. 2010). Here, although the language of the trial court's pretrial ruling admittedly was very broad, the actual information or documentation that Lacy contended was erroneously not provided to her in discovery was much narrower. Specifically, as support for her motion to compel, Lacy attached a copy of an email her attorney sent to a deputy prosecutor, stating, "The amount is in dispute. At the last taped statement one deponents [sic] mentioned that there was documentation showing exactly how much money was taken. . . . Do you have it?" App. Vol. II p. 56. In fact, the State did not have that documentation because Meijer failed to provide it despite repeated requests for it; the State did not engage in any deliberate misconduct in failing to provide this documentation to Lacy.

[13] Given the lack of malfeasance on the State's part and the relative narrowness of what Lacy actually requested, it would have been a very draconian measure to exclude any and all evidence related in any way to Meijer's and Neumeister's

investigation. We also cannot say that the State and Meijer's failure to provide the requested documentation prevented a fair trial. Lacy was able to depose Neumeister and so was able to prepare for trial. The relevance of the reports that triggered Neumeister's investigation would have been limited in any event. Primarily, it was "course of investigation" evidence, or the reason why Neumeister began his investigation and how he came to focus his viewing of surveillance videos recorded during Lacy's shifts. It was the viewing of those videos that was the crucial evidence of Lacy's guilt and identified her as a thief, not the reports that led to the viewing. Despite the pretrial order being in place, it would have been illogical to prohibit Neumeister from testifying as to what he discovered during his investigation and the logical conclusions he drew from his discoveries.

[14] The internal audit reports might have had some evidentiary value as to the total amount of cash that went missing from the gas station. In order to sustain a conviction for Level 6 felony theft, as opposed to a Class A misdemeanor, the State was required to prove that she stole at least $750.00 from Meijer. *See* Ind. Code § 35-43-4-2(a)(1). The State established that amount through Lacy's confession, plus Neumeister's testimony regarding how often he saw Lacy stealing from the cash register over a thirty-day period. The internal audit reports would have been merely superfluous evidence on that point.[2]

---

[2] Of course, if the reports revealed that less than $750 was stolen, that would be a different matter. There is no basis for speculating that they would have done so, however.

In sum, we conclude the trial court did not abuse its discretion in allowing Neumeister to testify about his investigation, despite the broad pretrial ruling that arguably could have been read as precluding such testimony. We recognize that, in discussing Lacy's objection at trial, the judge pro tempore only addressed her hearsay objection to the evidence, not her argument about discovery violations by the State and the pretrial ruling. However, this court will uphold a correct legal ruling on the admissibility of evidence "even where based on incorrect, or absent, legal reasoning below." *Reaves v. State*, 586 N.E.2d 847, 857 (Ind. 1992).

## II. *Surveillance Video Recording*

Next, we address Lacy's contention that the trial court erroneously admitted the DVD recording of the Meijer surveillance footage and erroneously allowed Neumeister to describe what he saw on the footage. Again, our review of the admission of evidence is for an abuse of discretion. *Perryman*, 80 N.E.3d at 247. To introduce a video recording into evidence, "'[T]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *McFall v. State*, 71 N.E.3d 383, 388 (Ind. Ct. App. 2017) (quoting Ind. Evidence Rule 901(a)). Where, as here, no witness contemporaneously observed what is depicted on a video, it may be admitted into evidence under the silent-witness theory. *Id.* "In order to authenticate videos or photographs using the silent-witness theory, there must be evidence describing the process or system that produced the videos or photographs and showing that the process or system produced an accurate result." *Id.* (citing Ind. Evid. R. 901(b)(9)).

Generally, when a recording has been made by an automatic camera, "'there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and changing of custody of the film after its removal from the camera.'" *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005) (quoting *Edwards v. State*, 762 N.E.2d 128, 136 (Ind. Ct. App. 2002)). If a foundational requirement is missing, circumstantial evidence may be used to establish that it is more likely than not that the recording system produced an accurate result. *McFall*, 71 N.E.3d at 388.

[17] Here, Neumeister testified that he had been trained on how to use and record from the surveillance system, that it was in normal operating condition on the days that he viewed it, that it accurately recorded and reproduced video images, that it records continuously, and that it stores footage for thirty days. He also testified that the DVD introduced at trial was in fact a recording of the surveillance footage he had viewed directly from Meijer's surveillance system, although it was of a lesser quality than what he was able to see directly from the system. We are satisfied that this testimony was sufficient to authenticate the DVD recording of the surveillance footage as a "silent witness" and to make it admissible under Evidence Rule 901.

[18] Here, however, the question does not really seem to be whether the DVD was properly admitted. The recording from the Meijer surveillance system is rather grainy and it is not possible to directly observe Lacy committing theft on it. Thus, even if the DVD was erroneously admitted it was not prejudicial to Lacy.

Instead, Neumeister had to testify as to what he could observe when viewing the clearer surveillance footage at Meijer and had the ability to zoom in and out. That testimony—along with Lacy's confessions—is what constituted proof of her guilt.[3]

[19] It appears to us that any complaint as to Neumeister's testimony would be more accurately framed as a best evidence rule issue, although Lacy did not make an express objection on that basis.[4] Instead, she made a more general objection about the original video not having been provided to the defense. Generally, under the best evidence rule, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a statute provides otherwise." Ind. Evid. R. 1002. The rule applies to video recordings. *See Wise v. State*, 26 N.E.2d 137, 143 (Ind. Ct. App. 2015) (analyzing admissibility of copies of cell phone videos under the best evidence rule), *trans. denied*.[5]

---

[3] Although it is tempting to say that any admission of Neumeister's testimony was harmless in light of Lacy's confessions, we must keep in mind the corpus delicti rule, as Lacy points out. Under that rule, a person cannot be convicted solely on the basis of a nonjudicial confession; there must be independent proof of the corpus delicti, meaning some independent evidence that someone committed the crime charged. *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017). Without Neumeister's testimony, there is only the challenged—and never directly admitted—evidence regarding Meijer's internal audit reports as evidence that a crime was committed by someone.

[4] The State contends that Neumeister's testimony was harmless error because Lacy did not immediately object when he first testified regarding what he was able to see on the surveillance footage. This would appear to be more of a waiver argument than a harmless error argument. In any case, this testimony was given before it was made clear that the DVD recording of the surveillance footage was of lesser quality than the footage Neumeister had been able to watch, at which point Lacy objected. We do not believe Neumeister's testimony could be said to be harmless error.

[5] Prior to 2014, Evidence Rule 1001(2) expressly stated that the best evidence rule applied to "photographs" and that that term included "videotapes." The Rule thereafter was amended to state that a "photograph" is "a photographic image or its equivalent stored in any form" and it no longer expressly mentions video recordings. Ind. Evid. R. 1001(c). We do not believe that our supreme court intended to exclude video

Evidence Rule 1003 provides, "A duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." It was arguably unfair to admit the DVD in this case because it was of significantly lower quality than the original viewed by Neumeister, and as a result of that lower quality the jury was unable to see the evidence of theft that Neumeister described seeing on the higher-quality original. *See Belcher v. State*, 797 N.E.2d 307, 309-10 (Ind. Ct. App. 2003) (holding duplicate of document was erroneously admitted in violation of best evidence rule where duplicate was not fully legible, including in places that would have been relevant to determining guilt of defendant).

[20] However, Evidence Rule 1004 states:

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> (a) all originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> (b) an original cannot be obtained by any available judicial process;
>
> (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by

recordings from the best evidence rule by this amendment absent a clear declaration that videos are *not* included within the rule.

pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

(d) the writing, recording, or photograph is not closely related to a controlling issue.

"Other evidence" to prove the content of an item may include "[t]estimony of a witness who recalls the content of the writing, photograph, or recording . . . ." Weissenberger's INDIANA EVIDENCE COURTROOM MANUAL ch. 1004, p. 361 (2011-2012 ed.).[6]

[21] Subparts (c) and (d) of Rule 1004 clearly would not apply here. Subpart (b) generally has been construed to refer to original items that cannot be subpoenaed because they are outside a court's jurisdiction, which again does not appear to have been an issue here. *See* Weissenberger at p. 362. That leaves subpart (a) as a possible basis for allowing Neumeister to testify as to what he saw on the original surveillance video footage. It is unclear whether the original surveillance footage was "lost" or "destroyed" by the time of trial, given that the system normally only saved thirty days-worth of footage before it would record over the older material. However, Neumeister also indicated that

---

[6] Although not yet addressed in Indiana, other jurisdictions have held that a witness may not testify as to what they saw on a video recording without introduction of the video that the witness actually watched, unless the requirements of Evidence Rule 1004 or its equivalent are satisfied. *See, e.g., T.D.W. v. State*, 137 So. 3d 574, 576 (Fla. Dist. Ct. App. 2014); *State v. Teague*, 64 S.W.3d 917, 922 (Mo. Ct. App. 2002); *State v. Urbaschak*, 342 P.3d 1108 (Or. Ct. App. 2015).

he had made the DVD the day before trial—meaning the older footage would have been saved somehow on the Meijer surveillance system.

[22] This case presents an unusual circumstance not apparently foreseen by the drafters of Evidence Rule 1004, both here and in other jurisdictions. That is, Neumeister's testimony indicated that it was an inherent technological flaw of the surveillance system that any recordings made from it were of lower quality than what can be seen on the system itself. It also does not appear that there was a practical way for the jury to see the original video, short of a field trip to watch the recordings directly from the Meijer surveillance system. There also is no indication that the failure to make a clearer DVD duplicate from the original video was the result of bad faith on the State's or Neumeister's part. Although this case may not fit precisely within the parameters of Evidence Rule 1004's language, we note the following comment by the advisory committee that drafted Federal Rule of Evidence 1004, upon which Indiana's rule is closely modeled: "Basically the rule requiring the production of the original as proof of contents has developed as a rule of preference: if failure to produce the original is satisfactorily explained, secondary evidence is admissible." Fed. R. Evid. 1004 (Advisory Committee notes). Here, the State and Neumeister provided a satisfactory explanation for why the original video could not be produced (or reproduced accurately on a DVD). As such, Neumeister could provide secondary evidence by testifying about what he was able to see on the original video.

[23] To the extent there could have been more information presented about the surveillance video and the circumstances surrounding the DVD's creation, we emphasize that Lacy did not make a best evidence rule objection to Neumeister's testimony. Thus, the State was not given an opportunity to provide more of a foundation related to the best evidence rule. *See Willis v. State*, 510 N.E.2d 1354, 1357 (Ind. 1987) (noting State could not be faulted for providing inadequate foundation for introduction of evidence where defendant did not object on that basis and State was not given opportunity to establish foundation), *cert. denied*; *State v. Nelsen*, 183 P.3d 219, 223 (Or. Ct. App. 2008) (noting that application of Evidence Rule 1004 is fact-sensitive and government had not been alerted by defendant's objection that it needed to further develop the record on videotape's admissibility), *rev. denied*. In sum, given the nature of Lacy's trial objection and the record before us, the trial court did not abuse its discretion in allowing Neumeister to testify about what he was able to observe on the Meijer surveillance video recordings.

## Conclusion

[24] The trial court did not abuse its discretion in allowing Neumeister to testify about his investigation into cash shortages at the gas station where Lacy worked and in allowing him to testify as to what he observed on surveillance video footage. We affirm Lacy's conviction for Level 6 felony theft.

[25] Affirmed.

Najam, J., and Mathias, J., concur.